**Kishin Ramchand BALANI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 79–3624.

United States Court of Appeals,
Sixth Circuit.

Argued April 13, 1981.

Decided Feb. 8, 1982.

David Carliner, Carliner & Gordon, Washington, D. C., for petitioner.

James C. Cissell, U. S. Atty., Patrick J. Hanley, Asst. U. S. Atty., Cincinnati, Ohio, Dewey Wotring, Deportation Officer, INS, Louisville, Ky., Edwin Chauvin, Jr., Dist. Director, INS, New Orleans, La., James P. Morris, Robert Kendall, Jr., Gen. Lit. & Legal Advise Sect., Crim. Div., Dept. of Justice, Washington, D. C., for respondent.

Before WEICK and ENGEL, Circuit Judges, and RICE, District Judge.*

PER CURIAM.

This matter is before the Court on the petition of Kishin Ramchand Balani for review of an order of the Board of Immigration Appeals, dated September 24, 1979, denying his motion to reopen his deportation proceedings in order that he could apply for a suspension of deportation.

The issue in this proceeding is whether the Board of Immigration Appeals abused its discretion by denying Petitioner's motion to re-open his deportation proceedings in order to apply for discretionary relief of suspension of deportation pursuant to 8 U.S.C. § 1254(a)(1), upon the ground that Petitioner had failed to present new facts which would establish a *prima facie* case of extreme hardship as required by the law. We hold that the Board did not abuse its discretion and, accordingly, affirm the decision of the Board of Immigration Appeals.

The Petitioner, a native and citizen of India, first entered the United States in 1968 as a non-immigrant visitor for business purposes. He overstayed his visa, but departed on July 30, 1969, prior to the commencement of deportation proceedings, af-

* Hon. Walter H. Rice, Judge, United States District Court for the Southern District of Ohio, sitting by designation.

ter the Service had issued a show cause order directing the Petitioner to show why he should not be considered an "overstay."

Balani re-entered the United States as a visitor for business purposes on May 30, 1970, with authorization to stay until October 4, 1970. He again overstayed his visa, finally departing on December 30, 1970, after the Service had issued a warrant of arrest and after he had been found deportable by the Service.

Petitioner last entered the United States as a visitor for business purposes on January 19, 1971, with authorization to remain until May 18, 1971. His application for an extension beyond that date was denied and he was granted the privilege of departing the United States on a voluntary basis on or before July 14, 1971. This date was extended several times until September 22, 1972, in lieu of the initiation of deportation proceedings. The Petitioner did not depart and has remained in the United States without authority from the Service since that date.

Through various dilatory actions,[1] some of which are the responsibility of the Service, Balani has remained in the United States since the time of his final re-entry.

On August 24, 1979, after a lengthy and time consuming series of procedural steps, the Petitioner moved to re-open his deportation proceedings in order to apply for the discretionary relief of suspension of deportation under 8 U.S.C. § 1254(a)(1). He was granted a stay of deportation until September 24, 1979. On that date, the Board denied his motion to re-open his deportation matter. The instant appeal followed the denial of this motion.

In support of his application for discretionary relief of suspension of deportation, the Petitioner has set out the following facts: that he has had for seven years an ongoing business in Louisville, Kentucky;[2] that he has been married and has sired a son who is an American citizen; that all of his close relatives live in the United States, either as permanent residents or as citizens; that he has no close relatives in India; that his brother has obtained approval of a visa petition according Balani a preference under the Fifth Preference portion of the immigration quota (reserved for siblings of United States Citizens); that his business, solely owned and operated by him in Louisville, Kentucky, since 1972, provides sole support for himself and his family, employs three persons who are either permanent residents or citizens, and grosses approximately $160,000 annually; and that he owns a home in the United States.[3]

---

1. On February 25, 1972, the Petitioner applied for permanent resident status based upon his investment in a business. This application was denied as a matter of discretion by the District Director on August 22, 1972. The application was renewed in March of 1973, and was again denied. At the same time, Petitioner was found to be deportable. The Immigration Judge ordered that Balani be deported. An appeal to the Board of Immigration Appeals was dismissed in May, 1975. A request for reconsideration by the Board was denied on July 2, 1976. The Board found that the Petitioner did not merit a grant of adjustment of status for voluntary departure, in that no significant favorable factors were present in the Petitioner's case, and that he did not submit any new information which would bear on an exercise of discretion. On July 29, 1976, Petitioner filed an application for permission to re-apply for admission into the United States after deportation or removal, which was denied in September, 1977. A subsequent appeal of this decision was denied by the Regional Commissioner in October, 1977. An application for

stay of deportation was denied in September, 1977, but Petitioner was not contacted by the Service or instructed to report for deportation.

2. By this date, said business had been in existence for a total of nine years.

3. Subsequent to the perfecting of his appeal in this Court and prior to oral argument thereon, the Petitioner filed a motion to hold his Petition in abeyance pending his attempt to obtain Fifth Preference status under the immigration quota on the basis that his brother is now a United States citizen. Should said motion have been granted, it was the intention of the Petitioner to move the Board of Immigration Appeals to re-open the deportation proceedings and to grant him voluntary departure. This Court, feeling that should the Board of Immigration Appeals take favorable action on Petitioner's request for a grant of voluntary departure, the within appeal might well be mooted, sustained the Petitioner's motion to hold his petition in abeyance. On August 7, 1981, the Board of Immigration Appeals denied the Petitioner's

■ Petitioner's application for suspension of deportation is controlled by Section 244(a) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1254(a)(1), which states:

> As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—
>
> (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in *extreme hardship to the alien or to his spouse, parent or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.* (emphasis added).

An alien may move to reopen deportation proceedings to seek discretionary relief where circumstances change after a deportation order is entered. *Urbano de Malaluan v. INS,* 577 F.2d 589, 592 (9th Cir. 1978). The Board may not grant such a motion unless it is based upon material new facts. 8 C.F.R. § 3.2 (1979). The Board must determine whether the alien has set forth sufficient facts in his moving papers to make a prima facie case of eligibility for relief. *Urbano de Malaluan v. INS, supra,* at 592–93.

In denying petitioner's motion to re-open, the Board of Immigration Appeals held:
... the motion and affidavit presented do not state new facts which would establish, prima facie, the extreme hardship motion to re-open his deportation proceedings. The within appeal is thus ripe for a decision upon its merits.

required to make the respondent [petitioner] eligible for suspension of deportation under Section 244(a)(1) of the Act. [8 U.S.C. § 1254(a)(1)]

Specifically, the Board held that the Petitioner had not made out a *prima facie* case of hardship. It found that he had managed to escape deportation and to accrue the statutory minimum for continuous presence under 8 U.S.C. § 1254(a)(1) (seven years) by resorting to dilatory tactics. The fact that he had a United States citizen son, according to the Board, was insufficient to meet the statutory requirement of extreme hardship. The Board also held that the following facts did not serve to make out a *prima facie* showing of extreme hardship: (1) that Balani might suffer some economic hardship if he sells his business, or (2) that Balani's United States citizen son might have better economic and educational opportunities in the United States.[4]

■ The proper inquiry on review before this Court is whether the Board abused its discretion in denying Petitioner's motion to reopen deportation proceedings. *Lee v. INS,* 550 F.2d 554, 555 (9th Cir. 1977); *Luna-Benalcazar v. INS,* 414 F.2d 254 (6th Cir. 1969); *Tupacyupanqui-Marin v. INS,* 447 F.2d 603 (7th Cir. 1971); *Hun Chak Sun v. INS,* 415 F.2d 791 (9th Cir. 1969), *cert. denied,* 397 U.S. 908, 90 S.Ct. 905, 25 L.Ed.2d 89 (1970).

> " 'Abuse of discretion' is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."

*McBee v. Bomar,* 296 F.2d 235, 237 (6th Cir. 1961), *quoting, In re Josephson,* 218 F.2d 174, 182 (1st Cir. 1954).

---

4. The Board apparently considered the issue of the citizen child and the possible economic loss to the Petitioner in the disjunctive or separately as opposed to jointly or together.

There is no exact measure of what constitutes abuse of discretion. It is more than the substitution of the judgment of one tribunal for that of another. Judicial discretion is governed by the situation and circumstances affecting each individual case. "Even where an appellate court has power to review the exercise of such discretion, the inquiry is confined to whether such situation and circumstances clearly show an abuse of discretion, that is, arbitrary action not justifiable in view of such situation and circumstances."

*N.L.R.B. v. Guernsey-Muskingum Electric Co-op, Inc.*, 285 F.2d 8, 11 (6th Cir. 1960), *quoting, Hartford-Empire Co. v. Obear-Nester Glass Co.*, 95 F.2d 414, 417 (8th Cir. 1948).

In determining whether the Board abused its discretion, this Court must decide whether the denial of Petitioner's motion to re-open deportation proceedings was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group. *Hang v. INS*, 360 F.2d 715, 719 (2d Cir. 1966). Upon due consideration, we conclude that the Board did not abuse its discretion in concluding that Petitioner had failed to make a *prima facie* showing of eligibility for suspension of deportation by a showing of extreme hardship which would justify a re-opening of his deportation proceedings, under the discretionary review provided the Board in 8 U.S.C. § 1254(a)(1).

■ An application to re-open deportation proceedings is addressed to the sound discretion of the Attorney General which is unassailable except upon a clear showing of abuse of discretion. *Williams v. Sahli*, 271 F.2d 228 (6th Cir. 1959), *cert. denied*, 361 U.S. 966, 80 S.Ct. 588, 4 L.Ed.2d 547 (1960); *Williams v. Sahli*, 292 F.2d 249 (6th Cir. 1961), *cert. denied*, 368 U.S. 977, 82 S.Ct. 482, 7 L.Ed.2d 439 (1962). The Board did not abuse its discretion in denying Petitioner's motion to re-open the deportation proceedings in this case. The denial of Petitioner's motion to re-open deportation proceedings cannot be said to have been made without a rational explanation.

■ The Board did not inexplicably depart from established policies or rest its decision upon an impermissible basis such as invideous discrimination against a particular race or group. An alien cannot gain favorable status merely by the birth of a citizen child. *Choe v. INS*, 597 F.2d 168, 170 (9th Cir. 1979); *Lee v. INS, supra.* Petitioner has failed to establish that his deportation would result in extreme hardship to his United States citizen child. The fact that Petitioner now has to sell a business, which he had been operating for seven years at the time of the petition, and which will now cause him economic hardship, is insufficient to sustain a finding of extreme hardship. *Lee v. INS, supra; Urbano de Malalaun v. INS, supra; Blanco-Dominguez v. INS*, 528 F.2d 382, 383 (9th Cir. 1975); *Nishikage v. INS*, 443 F.2d 904 (9th Cir. 1971); *Fong Choi Yu v. INS*, 439 F.2d 719 (9th Cir. 1971). In this case, it is clear that the Petitioner has known since 1972 that he does not qualify as a business investor in the United States. It cannot be said, therefore, that the business investment of the Petitioner was made long before any deportation proceedings were started.

The Board did not abuse its discretion in concluding that, even if Petitioner had satisfied the statutory requirements of 8 U.S.C. § 1254(a)(1), his motion to re-open would still be denied as a matter of discretion, due to prior falsification of visa applications. The Administrative Record reveals that Petitioner was refused visas at Bangkok on June 20, 1966, and on May 10, 1967, in Malaysia, because of his inability to establish that he was a bona fide non-immigrant. He eventually received a visa in Kabul, Afghanistan, in 1968, as a visitor for business purposes, upon the representation that he had never before applied for a visa to enter the United States. Petitioner also received visas in Montreal in 1969 and 1970 without revealing his previous record of visa refusals.

Additionally, the Board did not abuse its discretion in concluding that the Petitioner raised no material new facts in his motion.

Of particular relevance to the instant proceedings is the United States Supreme Court's summary reversal on March 2, 1981, in *Immigration and Naturalization Service v. Wang*, 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981), rev'g, 622 F.2d 1341 (9th Cir. 1980). The Ninth Circuit Court of Appeals had held that the aliens' claim that their deportation would impose economic, cultural and educational hardship upon their citizen children, who did not speak Korean, considered *together* with the claim that their deportation would impose severe economic hardship on themselves and on their children through liquidation of their business and personal assets, constituted a *prima facie* case of extreme hardship that the Immigration and Nationality Act requires for the re-opening of deportation proceedings. Although it is difficult to define the Supreme Court's reason for summarily reversing this decision, such an action can be taken as indicating the Court's view that such a set of circumstances, considered together (economic, cultural and educational hardship to citizen children and the necessity of liquidating business and personal assets—facts strikingly similar to the facts in the within appeal) does not establish, *as a matter of law*, that the Board has abused its discretion in refusing to allow the Petitioner to re-open deportation proceedings. The *Wang* reversal indicates the Supreme Court's determination that matters of immigration should be left with the Service, to be reviewed by the Court only upon a showing of abuse of discretion.[5]

Congress has entrusted to the Attorney General of the United States the responsibility of exercising discretion in immigra-

tion matters. The Courts will not substitute their discretion for that of the Attorney General. *Chen v. Foley*, 385 F.2d 929 (6th Cir. 1967), cert. denied, 393 U.S. 838, 89 S.Ct. 115, 21 L.Ed.2d 109 (1968). The Board of Immigration Appeals did not abuse its discretion in this case.

The judgment of the Board of Immigration Appeals is affirmed.

---

5. Given the Supreme Court's summary reversal of the Ninth Circuit's determination of extreme hardship in *Wang*, which was based on a consideration of hardship to the citizen children *together with* the hardship to the aliens, there is no basis, in the instant case, for concluding that the Board's determination of no extreme hardship was an abuse of discretion on the ground that the Board considered the hardship to the Petitioner's citizen child, *separate and apart from* the economic hardship to the Petitioner, himself. The Supreme Court's reversal in *Wang* clearly demonstrates that extreme hardship is not established as a matter of law

when purported hardships to citizen children are considered collectively with, as opposed to separately from, the hardships to the alien seeking to avoid deportation. Thus, even if this Court were to reverse the Board's decision on the ground that it had erred in failing to consider all factors of hardship presented herein, as an integrated whole, our decision would be susceptible to the same summary reversal as visited upon the Ninth Circuit in *Wang*, upon the theory that these factors together do not constitute extreme hardship as a matter of law, thereby warranting reversal of the Board's decision as an abuse of discretion.