**Thomas**⁴ **LEBLANC and Marie Margaret Leblanc, Petitioners,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 82–1829.**

United States Court of Appeals, First Circuit.

Argued June 7, 1983.

Decided Aug. 18, 1983.

Rehearing and Rehearing En Banc Denied Oct. 13, 1983.

---

Carlos V. Garcia Gutierrez, Santurce, P.R., for petitioners.

Francesco Isgro, Atty., Dept. of Justice, with whom J. Paul McGrath, Asst. Atty. Gen., Civ. Div., and Charles E. Hamilton, III, Atty., Dept. of Justice, Washington, D.C., were on brief, for respondent.

Before CAMPBELL, Chief Judge, McGOWAN,* Senior Circuit Judge, and SELYA,** District Judge.

McGOWAN, Senior Circuit Judge.

Mr. and Mrs. Leblanc entered the United States as nonimmigrants, overstayed their period of legal entry, and have been ordered to be deported. Pursuant to 8 U.S.C. § 1254(a)(1) (1976 & Supp. V 1981) ("section 1254(a)(1)"),[1] they petitioned the Board of

---

* Of the District of Columbia Circuit, sitting by designation.

** Of the District of Rhode Island, sitting by designation.

1. As hereinafter prescribed in this section, the Attorney General may, in his discretion, sus- pend deportation and adjust the status to that of an alien lawfully admitted for perma- nent residence in the case of an alien (other than an alien described in section 1251(a)(19) of this title) who applies to the Attorney General for suspension of deportation and—

   (1) is deportable under any law of the United States except the provisions specified

Immigration Appeals (the "Board") to reopen its most recent determination in their cause, to consider their motion to suspend their deportations, and to change their status to lawful permanent residents. This, their fourth petition to reopen, was denied, and they appeal. For the reasons stated below, we uphold the Board's decision.

## I

Thomas Leblanc left Dominica, British West Indies, for Puerto Rico in August of 1974. Thomas was a resident and citizen of Dominica and he entered the United States as a nonimmigrant visitor for pleasure for a two-week period. He has never left the United States, however. He began work as an electrician shortly after his arrival in Puerto Rico and he continues to work in that trade.

Marie Margaret Commodore entered the United States in December of 1973. She too was a citizen and resident of Dominica who entered the United States in Puerto Rico, ostensibly for a short pleasure visit. She began work as a domestic not long after; she went to Dominica in March, 1975 to visit her ailing mother; she returned to Puerto Rico in June, 1975 with permission to remain for five days; and she has remained there continuously since then. Marie and Thomas were married in October of 1975. Their first child, Thompson, was born in December of that year. A second child, Christopher, followed in July, 1979.

Neither Thomas nor Marie applied for extensions of their initial visitation periods. In January, 1978 they appeared before the INS voluntarily in the hope that they could legitimize their presence in the United States, apparently believing this was necessary in order for Thomas to pursue a claim for back wages against a former employer. In April, 1978 an immigration judge found them deportable and granted them leave to depart voluntarily by July of 1978 or face involuntary deportation. They did not leave voluntarily. Instead they sought and received many extensions, ultimately obtaining a voluntary departure date of no later than September 30, 1981.

In addition to moving for their various extensions of time, the Leblancs attempted to reverse the initial decision to deport them. First they moved to reopen the deportation in order to apply for political asylum. An immigration judge denied the motion as frivolous. They again moved to reopen, this time to allow them to move to suspend their deportation under section 1254(a)(1). The motion was denied by an immigration judge in September 1980, it being clearly without merit as neither Leblanc had yet satisfied the seven-year continuous residence requirement of that section, *see supra* note 1. The Board of Immigration Appeals dismissed their appeal from the denial in March of 1981, the Board being of the opinion that they still did not satisfy the seven-year requirement. It denied their motion to reconsider in October of 1981, and this court affirmed that decision in July of 1982, concluding that the Board did not abuse its discretion. *Leblanc v. United States Department of Justice,* No. 81–1860 (1st Cir. July 7, 1982) (memorandum and order). This court noted that the Leblancs had by then satisfied the seven-year requirement but expressed the opinion that "petitioners who satisfy the seven year requirement by abusing the immigration laws and procedures should not gain favored status over those who comply with the applicable rules." *Id.*

Undaunted, the Leblancs moved to reopen their deportations to allow them to apply for suspension in August, 1982. Their motion was denied on September 16, 1982, because it lacked any evidentiary support. *See generally infra* pp. 688–89 (regu-

---

in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose de-

portation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence....

8 U.S.C. § 1254(a)(1) (1976 & Supp. V 1981).

lations requiring evidentiary support). They each filed another motion to reopen to allow them to suspend on September 13, 1982, this time accompanied by a considerable amount of evidentiary material. On October 8, 1982, the Board denied the motions.

The Board made it quite clear that its denial of the motions was an exercise of discretion and was independent of the Leblancs' eligibility *vel non* under the terms of the statute. Indeed, the Board made no findings as to statutory eligibility. The Board cited *INS v. Bagamasbad,* 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976) (per curiam), as authority for such discretion, and it relied primarily on three factors in denying the Leblancs' motions. First, Thomas and Marie began to work in this country almost immediately after their arrival. This violation of the immigration laws was considered an adverse factor, and the Board thought it suggested that Marie had misrepresented her purposes in returning to the United States in 1975. Second, although the Leblancs appeared voluntarily in 1978, they have gone to great lengths since then to avoid departure. Third, each of their previous motions lacked any merit, and, as noted by this court, such delay should not be rewarded. In sum, the Board felt that the Leblancs had shown consistent disregard for the immigration laws. Although they now present some evidence to support their claims of extreme hardship, a legal prerequisite for relief, the Board held that these equities do not outweigh the adverse factors cited and that many of the causes of hardship only developed well after the Leblancs were first ordered to depart.

## II

The Leblancs appeal the Board's decision, alleging three defects in the proceedings. First, they claim that the Board was obligated to determine whether they stated a prima facie case for relief, that they did in fact make such a case, and therefore the Board was obligated to remand their petitions to an immigration judge for a hearing. Second, even if the Board was not obligated to remand for a hearing, it was an abuse of discretion not to do so in this case. Finally, they claim that they were denied effective assistance of counsel until the present proceedings and that this also supplied a basis to mandate a hearing on the merits of their petition now.

### A. Board Discretion

■ Congress has afforded the Attorney General the power, in his discretion, to suspend the deportation of individuals who satisfy four criteria: (1) they are deportable; (2) they have resided in the United States for at least seven uninterrupted years prior to their petition to suspend; (3) they have been of good moral character throughout that period; and (4) deporting them would, "in the opinion of the Attorney General, result in extreme hardship." 8 U.S.C. § 1254(a)(1) (1976).[2] Eligibility for suspension is determined in the first instance by the Immigration and Naturalization Service ("INS"). Typically a motion to suspend would be made during a deportation hearing, but it is not unusual for an alien to request either the immigration judge who heard his case or the Board who heard his appeal to reopen the proceedings to entertain the motion pursuant to 8 C.F.R. §§ 3.2, 3.8(a) (1983). *See INS v. Jong Ha Wang,* 450 U.S. 139, 140, 101 S.Ct. 1027, 1029, 67 L.Ed.2d 123 (1981) (per curiam).

The regulations provide that
[m]otions to reopen ... shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not

---

2. *See supra* note 1. Until recently, the Attorney General was required to inform the Congress of any individual whose deportation was so suspended. Either House of Congress could then in effect reinstate the deportation by passing a resolution disapproving of the suspension within a specified time. *See* 8 U.S.C. § 1254(c)(2) (1976). The Supreme Court held the one-house veto embodied in section 1254(c)(2) unconstitutional, but it found section 1254(c)(2) severable from the rest of the statute. *INS v. Chadha,* —— U.S. ——, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted . . . unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing.

8 C.F.R. § 3.2 (1983). It is further provided that "[m]otions to reopen shall state the new facts to be proved at the reopened hearing and shall be supported by affidavits or other evidentiary material." *Id.* § 3.8(a). The statute and regulations thus confer considerable discretion on the Attorney General and his delegates, and such circumscription of discretion as exists would tend to make reopening less, not more, available.

The contours of our discussion of the Board's obligations and the range of its discretion are formed by two Supreme Court decisions. In *INS v. Jong Ha Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam), a Korean couple sought relief under section 1254(a)(1) after unsuccessful attempts to become permanent residents under other provisions of the Immigration and Nationality Act. They claimed that deportation would cause extreme hardship because their English-speaking children would be deprived of educational opportunities in Korea, and the couple would suffer some economic detriment. None of these allegations were sworn to or supported by evidence. Without a hearing, the Board denied the motion to reopen, finding that the couple had failed to make out a prima facie case of extreme hardship under the statute. The Ninth Circuit reversed en banc. *Jong Ha Wang v. INS,* 622 F.2d 1341 (9th Cir.1980) (en banc), *rev'd,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam). The court said that the couple had alleged facts sufficient to get a hearing and that providing a hearing would comport with the statute's ameliorative purposes. *Id.* at 1349.

The Supreme Court reversed the Ninth Circuit for two reasons. First, the court of appeals ignored the requirement of 8 C.F.R. § 3.8(a) that allegations be supported by affidavit or other evidence. The Ninth Circuit "circumvented this aspect of the regulation, which was obviously designed to permit the Board to select for hearing only those motions reliably indicating the specific recent events that would render deportation a matter of extreme hardship." 450 U.S. at 143, 101 S.Ct. at 1030. Second, the definition of "extreme hardship" is committed "in the first instance to the Attorney General and his delegates, and their construction and application of this standard should not be overturned by a reviewing court simply because it may prefer another interpretation." *Id.* at 144, 101 S.Ct. at 1031. The Supreme Court found the Board's definition and application beyond reproach and the Ninth Circuit's disposition beyond its proper authority. *Id.* at 144–45, 101 S.Ct. at 1031.

*Wang* thus reinforces the discretionary tenor of the statute and regulations, and suggests that the Board is to be accorded a great deal of leeway in exercising its authority. It does not squarely answer the question we face, which is whether the Board may dispose of a case without determining whether the movant made out a prima facie showing under the statute, but dicta suggest that the Board may. First, the Court noted that the pertinent regulations, 8 C.F.R. § 3.2, are framed in the negative, establishing when the Board may *not* reopen, but saying nothing about when the Board *must* reopen. "Thus, the regulations may be construed to provide the Board with discretion in determining under what circumstances proceedings should be reopened." 450 U.S. at 144 n. 5, 101 S.Ct. at 1031 n. 5. Conceivably, then, the Board could decide that it will not reopen in cases such as the one at bar, where the movant may have made out a prima facie case, but the Board is persuaded that for other assertedly legitimate reasons it would not, as a matter of discretion, allow suspension.

Second, the Court stated that the Attorney General and his delegates may legitimately construe "extreme hardship" very narrowly. A narrow definition would be consistent with the words themselves,

which "indicate[ ] the exceptional nature of the suspension remedy." *Id.* at 145, 101 S.Ct. at 1031.[3] Too broad a definition or too generous an accompanying procedure would allow " 'any foreign visitor who has fertility, money, and the ability to stay out of trouble with the police for seven years [to] change his status . . . to that of permanent resident without the inconvenience of immigration quotas. This strategy is not fair to those waiting for a quota.' " *Id.* at 145, 101 S.Ct. at 1031 (quoting *Jong Ha Wang v. INS,* 622 F.2d 1341, 1352 (9th Cir.1980) (en banc) (Goodwin, J., dissenting)). Such reasoning could support the INS position here: in order to protect the integrity of the immigration laws, it may exercise its discretion to deny summarily attempts to suspend the deportation of aliens who have used frivolous claims to remain in the United States long enough to come within the ambit of section 1254(a)(1). Fairness to those who are playing by the rules argues for the INS not to benefit an alien who was not eligible for the exceptional remedy of suspension when first ordered to be deported.

Petitioners here claim that fairness to them dictates the opposite result. They claim that basic notions of fair play require that they be allowed to demonstrate their eligibility for relief under the statute once they have made a prima facie case, and therefore the Board cannot deny relief without addressing the issue of eligibility. Virtually the same argument was presented and rejected in *INS v. Bagamasbad,* 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976) (per curiam). The alien there had overstayed her tourist visa by four years and then had applied to have her status changed under 8 U.S.C. § 1255(a) (1976). Section 1255(a) relief is discretionary, and both the District Director of the INS and the immigration judge denied her relief as a matter

of discretion, without addressing her statutory eligibility, because "she had made serious misrepresentations to the United States consul who had issued her visa." 429 U.S. at 25, 97 S.Ct. at 200. The Board affirmed, concluding that it could exercise its discretion without reaching the question of eligibility. The Third Circuit reversed en banc. *Bagamasbad v. INS,* 531 F.2d 111 (3d Cir.) (en banc), *rev'd,* 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976) (per curiam). It held that the immigration officials could legitimately deny relief through the exercise of discretion, but they must first make findings with respect to eligibility. *Id.* at 117–18.

The Supreme Court reversed. The crux of its holding is that "[a]s a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach." 429 U.S. at 25, 97 S.Ct. at 200. Since everyone conceded that it was a proper exercise of discretion to deny the petition regardless of eligibility, it was quite appropriate not to make findings regarding eligibility, unless the statute clearly required otherwise. The statute makes no such requirement. *Id.* at 26, 97 S.Ct. at 201.

The Board relied on *Bagamasbad* in the case at bar. *Bagamasbad* is not directly on point, because it involved 8 U.S.C. § 1255(a), not *id.* § 1254(a)(1), which is involved here. However, this is a distinction without a difference. Both sections confer discretion on the Attorney General to grant extraordinary relief. Both leave substantial room for the Attorney General to define the substantive grounds for relief. Neither in terms requires any findings of eligibility before the Attorney General (or his designee) exercises his discretion to deny relief. We can perceive no reason to require any more of the immigration officials here than was mandated in *Bagamasbad.*[4]

---

3. Some notion of the limited purposes of the suspension remedy is given in discussions of its legislative history in *INS v. Chadha,* —— U.S. ——, ——, 103 S.Ct. 2764, 2774, 77 L.Ed.2d 317 (1983); *id.* at ——–——, 103 S.Ct. at 2804–06 (White, J., dissenting).

4. Petitioners argue that *Bagamasbad* is also distinguishable because the discretionary denial there was made after a hearing before an immigration judge; petitioners here have had no hearing at which to present their evidence. In both cases, however, the Board clearly would deny relief regardless of the evidence

A substantial body of lower court cases had adopted this position before, and especially since, *Wang*'s forceful statement of the broad discretion available to the Attorney General under section 1254(a)(1).[5] Cases not involving suspension also agreed that the decision to reopen is within the Board's discretion.[6] Two circuit court opinions seem to require more of the Attorney General, however.

In *Ramos v. INS,* 695 F.2d 181, 188 (5th Cir.1983), the Fifth Circuit opined that because the exercise of discretion "depends on the facts and circumstances of the particular case, . . . the Attorney General can properly fulfill his duty . . . only if he or his delegates actually consider those facts and circumstances." *Ramos* is distinguishable, however, for it did not involve a discretionary decision not to reopen. Rather, the appeal there was from a Board decision that rested entirely on a determination on the merits that extreme hardship was not shown. The court felt it could affirm the Board, therefore, only if the Board fairly and squarely addressed the petitioners' evidence and arguments. *Id.* at 183 n. 4; *see also id.* at 185–86 & n. 10, 187 & n. 16, 188–90. In the present case, the Board clearly made a discretionary decision and made no decision as to statutory eligibility. Our review, therefore, must be for abuse of discretion; we need not remand for further consideration of the facts. *Cf. id.* at 184 ("even where all the [statutory] requirements are met, suspension of deportation may be denied in the exercise of discretion").[7]

The second case is *Reyes v. INS,* 673 F.2d 1087 (9th Cir.1982). In *Reyes,* the Board denied a motion to reopen to allow application for suspension because, according to the Ninth Circuit, the Board disbelieved the movant's affidavits. The court found this disposition inconsistent with the motion to reopen, which is "not intended to be a substitute for a hearing. Its purpose is merely to allow the Board to screen out those claims that clearly lack merit and thus can be disposed of without a hearing." *Id.* at 1089.[8] More important for our purposes,

---

presented. In such circumstances, there is no more reason for us to remand for an inevitably superfluous hearing than there was to remand for superfluous findings in *Bagamasbad.*

5. *See, e.g., Agustin v. INS,* 700 F.2d 564, 566 (9th Cir.1983) ("The [Board] need not consider statutory eligibility if the alien's application would have been properly denied as a matter of administrative discretion."); *Balani v. INS,* 669 F.2d 1157, 1161–62 (6th Cir.1982) (per curiam) (dicta) ("even if this Court were to reverse the Board's decision on the ground that it had erred in failing to consider all factors of hardship presented herein . . ., our decision would be susceptible to the same summary reversal" as occurred in *Wang, id.* at 1162 n. 5); *Vaughn v. INS,* 643 F.2d 35, 37 (1st Cir.1981) ("[I]f any meaning is to be given the Board's *discretion* to deny suspension despite an applicant's eligibility under the statute, . . . we cannot mandate that suspension be granted simply upon a showing of such hardship." (emphasis in original) (citation omitted)).

6. *See Pang Kiu Fung v. INS,* 663 F.2d 417, 419 (2d Cir.1981) ("reopening deportation proceedings . . . [is] discretionary with the Board"); *Hibbert v. INS,* 554 F.2d 17, 21 (2d Cir.1977) (Board denied motion to reopen to allow application for voluntary departure; petitioner argues Board did not, but must, decide issue of

statutory eligibility; relief obviously would be denied as a matter of discretion, so "there is no reason to remand the case to the Board for a pointless determination of his technical eligibility, since the end result will be deportation"); *Lam Chuen Ching v. INS,* 467 F.2d 644 (3d Cir.1972); *Chul Hi Kim v. INS,* 357 F.2d 904 (7th Cir.1966).

7. For the same reason, our recent case of *Luna v. INS,* 709 F.2d 126 (1st Cir.1983), is distinguishable. There the Board denied a motion to reopen because it believed Luna had not stated a prima facie case. This court held that Luna had alleged facts that would demonstrate eligibility under the statute and that the Board had drawn factual conclusions that could only be made appropriately after a hearing. We accordingly remanded, though our remand forecloses neither a finding of ineligibility after a hearing nor a discretionary decision not to suspend deportation. *See id.* at 127 ("To obtain a reopening of his proceedings to allow him to apply for suspension of deportation, Luna must *at least* establish 'prima facie' . . . that he falls within the terms" of the statute. (emphasis added)).

8. The court found the Board's action unfair and illogical. The regulations require the movant to offer affidavits or other evidentiary material to support his claim. 8 C.F.R. § 3.8(a) (1983).

the Board had intimated that it would reopen only where the movant demonstrated both a prima facie case and the likelihood of success on the merits. Thus a second reason for the Board's decision was its prediction that the adverse aspects of the movant's case [9] would outweigh any positive aspects and inevitably lead to denial of an application to suspend. In dicta, the court expressed "grave doubts" about the propriety of considering anything other than the elements of the prima facie case for statutory eligibility when deciding whether to reopen. *Id.* at 1090. "[I]t seems inconsistent with the screening function served by the motion to reopen as well as fundamentally unfair to the movant for the Board to weigh the equities before granting a hearing to enable the alien to present his or her case in full." *Id.* at 1091.

We find the function of the motion to reopen as sketched by the court in *Reyes* to be out of step with the thrust of the Supreme Court's decision in *Wang* and with the lower court cases that have followed. *Wang* suggested that the Board has a great deal of leeway not only in giving meaning to "extreme hardship" under section 1254(a)(1), but also in constructing the procedures for determining whether to grant relief. Thus the Court entertained the possibility that the decision to reopen is left solely to the Board's discretion. *See* 450 U.S. at 143 n. 5, 101 S.Ct. at 1030 n. 5; *supra* pp. 689–90. *Bagamasbad,* moreover, held with regard to section 1255(a) that the "Board can pretermit threshold issues of

eligibility for relief if [it is] satisfied that an application would be denied in the exercise of discretion whether or not eligibility is established," *In re Reyes,* Interim Decision No. 2907, at 8 (BIA June 30, 1982) (citing *Bagamasbad*). In the light of these two decisions, we find it highly unlikely that the Supreme Court would agree with *Reyes* that the Board's function in screening motions to reopen for purposes of section 1254(a)(1) is merely to determine whether a prima facie case has been stated.

We believe it would be quite reasonable for the Board to consider the likelihood of success in deciding whether to reopen. If the Board will be the ultimate arbiter of the substantive question whether to suspend deportation, and if it is allowed great discretion in making such decisions, then considering the equities of a case at the procedural threshold would avoid unnecessary litigation both within INS and in the courts. As the Court noted in *Wang,* "the Government has a legitimate interest in creating official procedures for handling motions to reopen deportation proceedings so as readily to identify those cases raising new and meritorious considerations." 450 U.S. at 145, 101 S.Ct. at 1031. Administrative discretion informs the determination of a claim's merit. We conclude, therefore, that the Board may deny a motion to reopen without a hearing and without addressing statutory eligibility if in its opinion an application to suspend is certain to fail for discretionary reasons. That decision,

According to the *Reyes* court, it is inconsistent with this requirement for the Board to simply disbelieve the movant's proffered evidence. It makes little sense to make the movant present his full case with the motion for reopening and again at the hearing, if one is granted. Such duplicative proceedings would also impose a heavy burden on the petitioner. 673 F.2d at 1089–90. Since the Board had no reason not to believe the affidavits in *Reyes,* it had no basis for denying the motion to reopen. The court therefore remanded. *Id.* at 1090. On remand, the Board stated that its initial decision was not based on disbelief of the movant's affidavits. Rather, it had found them ambiguous, and because of other adverse aspects of her application, *see infra* note 9, the Board felt it could require a completely unambiguous prima facie

case before reopening. *In re Reyes,* Interim Decision No. 2907, at 4–6 (BIA June 30, 1982). On remand the Board denied the motion to reopen solely as a matter of discretion. *Id.* at 6–9.

9. The movant had entered the United States in 1968, stayed too long, and was found deportable in 1970. She avoided departure by going into hiding, finally presenting herself to the INS in July 1979 and filing the motion to reopen to allow an application to suspend. 673 F.2d at 1088. In the end, her flouting of the immigration laws by hiding out until she had been in this country the requisite time was the principal basis for the Board's denial of her motion. *See In re Reyes,* Interim Decision No. 2907, at 6–9.

however, is subject to review for abuse of discretion, a matter we now consider.

## B. *Abuse of Discretion*

■ Although our determination that the Board may deny reopenings as a matter of discretion leaves little room for substantive judicial review, the Board's decision in any given case is subject to review for abuse of discretion. *See, e.g., Balani v. INS,* 669 F.2d 1157, 1160 (6th Cir.1982). *Balani* sets out a useful standard against which to measure the Board's actions. The denial will be upheld unless it "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Id.* at 1161.

■ The Board's decision presently before us is not defective on any of these grounds. It rested on the finding, amply supported by the record, that the Leblancs' "submission of several frivolous motions, coupled with their unauthorized employment and failure to depart voluntarily, evidence their disregard for our immigration laws." Board Decision at 3. "[R]espondents should not be rewarded for . . . such dilatory tactics." *Id.* As discussed above, that ground is rational, it is fully consistent with previous denials of reopening that have been affirmed by the courts, and it is not an impermissible or invidious basis. *See, e.g., Agustin v. INS,* 700 F.2d 564, 566 (9th Cir.1983) (dilatory tactics); *Balani,* 669 F.2d at 1160 (dilatory tactics); *Pang Kiu Fung v. INS,* 663 F.2d 417, 418–19 (2d Cir. 1981) (hiding); *Vaughn v. INS,* 643 F.2d 35, 38 (1st Cir.1981) (seven-year requirement met only due to "two separate abuses of the privilege of voluntary departure"); *Lam Chuen Ching v. INS,* 467 F.2d 644, 645 (3d Cir.1972) (court rejects "the amazing argument . . . that because through the delaying tactics employed for appellant he was able to prevent his clearly rightful deportation for more than four years is a factor favorable to him").

Petitioners' attempts to demonstrate that the Board's decision was other than rational and consistent with past decisions are without weight. They assert that the Board considered only adverse factors, but the assertion is not supported by the record. The Board stated that the equities in the Leblancs' favor did not outweigh the adverse factors, Board Decision at 3, not that it did not consider the evidence presented. Petitioners consider it odd that their continued employment is held against them. Nevertheless, although their industry is perhaps praiseworthy, we must recognize that it is grounds for termination of nonimmigrant status and deportation, *see* 8 U.S.C. § 1251(a)(9) (1976); 8 C.F.R. § 214.1(e) (1983), and it demonstrates disrespect for the law that allowed the petitioners to enter the United States as nonimmigrants and forbids them to work during their purportedly brief visit. Petitioners also contest the Board's reliance on Marie's return to the United States in 1975 and her immediate reemployment as evidence that she misrepresented her purposes in obtaining her visa. They correctly note that no visa was required for nonimmigrants visiting Puerto Rico from Dominica, *see* 8 C.F.R. § 212.1(b) (1975), but shortly after her return that provision was amended to require visas of such nonimmigrants precisely because of the abuses of the privilege by people like her, who entered representing themselves as visitors but fully intended to make a residence in Puerto Rico. *See* 40 Fed.Reg. 33,431 (1975) (amending 8 C.F.R. § 212.-1(b)). Finally, petitioners make a polite version of the "amazing argument . . . that [their] delaying tactics . . . [are] favorable" considerations, *Lam Chuen Ching,* 467 F.2d at 645, which is its own refutation.

## C. *Defective Assistance of Counsel*

■ Petitioners contend that the four lawyers they employed sequentially in prior proceedings were so deficient as to merit special consideration of their case now. The argument seems to be that, if prior counsel had been competent and had not submitted frivolous claims, the Board might not have been as disposed to reject the present motions.

 It is true that the Board's decision was affected by the earlier frivolous claims. But "[l]itigants are generally bound by the conduct of their attorneys, absent egregious circumstances." *United States v. Guerra de Aguilera*, 600 F.2d 752, 753 (9th Cir.1979) (per curiam). Petitioners contend that it is necessarily egregious for counsel's actions to be the basis for denying the client discretionary relief. We disagree. It is not unusual or egregious for counsel to make tactical decisions that ultimately fizzle and redound to the client's detriment. "This sort of tactical decision, even if in hindsight unwise, does not constitute ineffective assistance." *Rodriguez-Gonzalez v. INS*, 640 F.2d 1139, 1142 (9th Cir.1981).

We are not wholly convinced, moreover, that counsels' actions redounded to the detriment of petitioners here. The unsupported and frivolous motions of prior counsel gained petitioners four extra years in the United States beyond their initial date of deportation. The actions of present counsel have now kept them here another year. Present counsel claims that had he been counsel at the outset he could have made adequately documented claims under section 1254(a)(1) with ease. But when the Leblancs were first ordered deported, they had not been here long enough to claim under that section. Thus only the dilatory and frivolous actions of counsel they now claim to be ineffective allow them to appear before us today. In such circumstances, we see no reason to remand to the Board for further ruminations about the effectiveness of petitioners' representation. There has been no violation of fundamental fairness.

### III

The Leblancs ask us to consider the hardship life in Dominica will present for them and their children. In large measure any such hardship will result from the rigors of life that exist for all of Dominica's citizens. Surely there are people there now who are as afflicted as the Leblancs claim they will be, but who are waiting patiently for legal immigration visas for the United States.

In view of the Leblancs' repeated attempts to circumvent our immigration laws, we conclude that the Board of Immigration Appeals did not abuse its discretion in denying the Leblancs' motions to reopen without making findings as to their eligibility for relief under the statute. The decision of the Board was fully consistent with its past practice and its attempts to retain some semblance of order in lawful immigration. Because we also find that there was no abuse of discretion or failure of fundamental fairness in these proceedings, we affirm the Board's decision not to reopen the Leblancs' deportations.

*It is so ordered.*