Shaliffa Mohammed HOLLEY, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 83–1137.

United States Court of Appeals,
First Circuit.

Argued Oct. 5, 1983.

Decided Feb. 7, 1984.

John H. Ruginski, Jr., Providence, R.I., for petitioner.

Michael P. Lindemann, Atty., of Immigration Litigation, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Civil Division, and Charles E. Hamilton, III, Atty., of Immigration Litigation, Dept. of Justice, Washington, D.C., were on brief, for respondent.

Before BREYER, Circuit Judge, TIMBERS,* Senior Circuit Judge, and SMITH,** Senior District Judge.

BREYER, Circuit Judge.

Appellant Holley, a resident of Trinidad, arrived in the United States in 1973. She overstayed her visa. During her unlawful residence here, she married American citizens twice and had two American-born children. Evidently her American husbands were unable, or unwilling, to obtain a visa for her. And, the immigration authorities ordered her to leave in 1976. After various appeals, her deportation date was scheduled

* Of the Second Circuit, sitting by designation.

** Of the District of Montana, sitting by designation.

for December 30, 1980. On December 29, 1980, she asked to reopen her deportation proceeding to apply for suspension on grounds of hardship. Her motion to reopen was granted and she had a full hearing. The Administrative Law Judge then denied her application for suspension. She appealed to the Board of Immigration Appeals, which affirmed the ALJ's decision and declined to remand her case to the ALJ for consideration of new evidence. She now appeals the Board's decision to us.

■ The relevant standard governing suspension of deportation is contained in 8 U.S.C. § 1254(a)(1), which states that the Attorney General "may, in his discretion," suspend the deportation of an alien who has resided in the United States for seven years if the alien proves that he

> was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States . . . .

The Supreme Court, in *INS v. Jong Ha Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam), indicated that the Attorney General enjoys broad authority to interpret and apply the "extreme hardship" provision. *Id.* at 144–46, 101 S.Ct. at 1032; *see INS v. Phinpathya,* —— U.S. ——, ——, 104 S.Ct. 584, 592, 78 L.Ed.2d 401 (1984); *LeBlanc v. INS,* 715 F.2d 685, 689 (1st Cir.1983). And, in the absence of the "speech therapy" issue, to which we shall turn shortly, Holley's appeal would be frivolous. The ALJ found that "hardship" in her case consisted of the simple facts that finding a well-paying job in Trinidad would likely be more difficult than in the United States and that living conditions were likely to be more difficult there. As the federal courts have held both before and since *Wang,* the fact that an alien *and* the alien's citizen children may find economic or educational circumstances more difficult outside the United States does not require the INS to find "extreme hardship." *See, e.g., INS v. Jong Ha Wang,* 450 U.S. at 142–43, 101 S.Ct. at 1030; *Ramirez-Gonza-*

*lez v. INS,* 695 F.2d 1208 (9th Cir.1983); *Bueno-Carrillo v. Landon,* 682 F.2d 143 (7th Cir.1982); *Men Keng Chang v. Jiugni,* 669 F.2d 275, 278–79 (5th Cir.1982) (per curiam); *Banks v. INS,* 594 F.2d 760, 762 (9th Cir. 1979) (per curiam); *but cf. Ramos v. INS,* 695 F.2d 181, 186 (5th Cir.1983).

In addition, the ALJ made well-supported findings of facts that cast doubt on Holley's good character and on the appropriateness of the INS exercising its discretion on her behalf. These findings concerned two misdemeanor shoplifting convictions that she failed to disclose on her suspension application, false statements in applications for government benefits, and other fairly serious instances of misbehavior.

The one difficult issue in this case arises out of the fact that on appeal to the Board of Immigration Appeals, Holley's counsel, for the first time, sought to show that one of Holley's citizen children suffered from a serious speech defect. He added that Trinidad could not provide the child with the speech therapy available in the Rhode Island public schools. And he asked the Board for a remand to the ALJ to permit consideration of evidence on this issue. The Board questioned counsel on the matter. It concluded that "deportation would not cause [Holley] extreme hardship," and that "[t]he respondent's request for a remand of the proceedings is denied since it would not serve any useful purpose."

■ Holley essentially asks us to review the Board's decision not to remand her case to take evidence on the "speech therapy" issue. We believe the Board has at least as much independent authority to decide this remand request as it has when deciding whether or not to "reopen" a deportation proceeding to consider a suspension request. And, in this latter area, its powers to act independently are great. *INS v. Jong Ha Wang,* 450 U.S. at 144–45, 101 S.Ct. at 1031–1032; *LeBlanc v. INS, supra.* In *LeBlanc,* we noted that the Board not only can define "extreme hardship" and apply that term; but also, when deciding whether to reopen, the Board can "consider the likelihood of success;" and it can deny a motion

to reopen without reference to hardship "if in its opinion an application to suspend is certain to fail for discretionary reasons." *Id.,* 715 F.2d at 692. This court must accept the Board's decision not to reopen or to remand unless we find its action to be arbitrary, capricious, or an abuse of its power. *Id.* at 693 (citing *Balani v. INS,* 669 F.2d 1157, 1160 (6th Cir.1982)); *see INS v. Phinpathya,* —— U.S. at —— n. 6, 104 S.Ct. at 588–589 n. 6.

■ We find three considerations which, taken together, convince us that the Board's action here was neither arbitrary nor capricious. First, *Wang* establishes that specification of what constitutes "extreme hardship" is a task committed "in the first instance to the Attorney General and his delegates" and that they "have the authority to construe 'extreme hardship' narrowly should they deem it wise to do so." 450 U.S. at 144–45, 101 S.Ct. at 1031–1032. Thus, whether differential opportunities for treatment of speech defects can amount to "extreme hardship" is the *type* of decision that *Wang* leaves to the INS. We need not, however, explicitly decide whether the INS would have gone beyond the statute were it to interpret "extreme hardship" not to extend to the serious type of speech problem here at issue. Rather, in the circumstances the Board need only have decided that the speech defect problem did not have sufficient *weight* to overcome the other seriously negative features of appellant's case.

Second, the evidence of Holley's misbehavior is strong; and the record lacks much evidence of redeeming virtues (such as charitable work, civic involvement, etc.). Thus, the Board could reasonably have concluded that the bad outweighed the good to the point where deportation was warranted despite the child's speech defect problem. *See LeBlanc v. INS, supra; Phinpathya v. INS,* 673 F.2d 1013, 1019 (9th Cir.1981), *rev'd on other grounds,* —— U.S. ——, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984). In this respect, this case differs significantly from *Luna v. INS,* 709 F.2d 126 (1st Cir.1983), where the appellant had never had a hearing on "hardship," or an opportunity to

contest the facts relevant to the INS's negative assertions, or to present positive facts in his favor. Rather, this case is more like *LeBlanc,* where appellants' claim of hardship was weak, where there were numerous negative facts that might have weighed against their hardship claim, and where they had had previous opportunities to make their hardship argument.

Third, Holley did not raise the speech defect issue until her proceeding's appellate stage, and she presented no good reason for the delay. INS regulations provide that

> [m]otions to reopen ... shall not be granted unless it appears to the Board that evidence sought to be offered ... was not available and could not have been discovered or presented at the former hearing ....

8 C.F.R. § 3.2. Since there are obvious strong reasons for not allowing deportable aliens to prolong their stays in the United States by obtaining ever additional deportation postponements, it seems particularly reasonable for the INS to take this procedural policy into account on appeal when it has already reopened the proceedings once and given the alien a full opportunity to present evidence. In this respect, too, this case differs from *Luna* where the appellant clearly could not have presented at least one "new" feature of his case—a newborn child—in the reopening petition.

We note that the Board decision would have been less troublesome had the Board clearly spelled out its reasons for not remanding, instead of making the general statement that remand "would not serve any useful purpose." *See Ramos v. INS,* 695 F.2d at 188–90; *Santana-Figueroa v. INS,* 644 F.2d 1354 (9th Cir.1981); *cf. Dunlop v. Bachowski,* 421 U.S. 560, 571–72, 95 S.Ct. 1851, 1859–1860, 44 L.Ed.2d 377 (1975). Nonetheless, those reasons are sufficiently plain on the record that remand would serve no useful purpose. *See NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766–67 n. 6, 89 S.Ct. 1426, 1430 n. 6, 22 L.Ed.2d 709 (1969) (plurality opinion); *NLRB v. Community Health Services, Inc.,* 705 F.2d 18, 20 (1st Cir.1983); *Kurzon v. United States*

*Postal Service,* 539 F.2d 788, 792–93 (1st Cir.1976); *Alabama Power Co. v. Federal Power Commission,* 511 F.2d 383, 392 (D.C. Cir.1974). The decision of the INS is

*Affirmed.*