Philip THOMAS, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 91–1867.

United States Court of Appeals, First Circuit.

Submitted April 3, 1992.

Decided Oct. 5, 1992.

---

John S. Pomeroy and Paris, Pomeroy & Pomykato, Boston, Mass., on brief, for petitioner.

Stuart M. Gerson, Asst. Atty. Gen., Robert Kendall, Jr., Asst. Director, Donald E. Keener, Acting Asst. Director, Office of Immigration Litigation, Civ. Div., Washington, D.C., on brief, for respondent.

Before BREYER, Chief Judge, CAMPBELL, Senior Circuit Judge, and SELYA, Circuit Judge.

PER CURIAM.

This petition for review presents the question whether the Board of Immigration Appeals abused its discretion in affirming a deportation order made during an *in absentia* hearing. The facts in this case are not disputed. Thomas, a native of Trinidad, legally entered the United States as an immigrant in 1980. In November 1984, he was convicted in a Massachusetts district court of assault and battery by means of a dangerous weapon (a baseball bat). The court sentenced him to two years imprisonment. Subsequently, in June 1986, the Immigration and Naturalization Service (INS) issued an order to show cause why he should not be deported under 8 U.S.C. § 1251(a)(4) (conviction based on a crime involving moral turpitude committed within five years of entry and for which a sentence of one year or more is imposed).

In total, five hearings were held between April and December 1987. At the first hearing, Thomas appeared without an attorney. The immigration judge continued the case to give him time to secure counsel. Thomas then hired an attorney to represent him. Due to a conflict in the attorney's schedule, however, only Thomas appeared at the next hearing; his attorney sent a letter with Thomas explaining his absence. Accordingly, the immigration judge again continued the case. At the third hearing on June 8, counsel again was not present. Unlike the previous hearing, counsel did not notify the court of any reason for this second absence. Although the immigration judge noted that Thomas's counsel had not requested a continuance, he gave Thomas

"one more chance" on the basis that the judge did not want to penalize Thomas for his attorney's absence.

Finally, on June 22, both Thomas and counsel appeared. At this time, Thomas admitted all the factual allegations, conceded deportability and informed the judge that he would be filing an application for a waiver of deportation under 8 U.S.C. § 1182(c). The judge then set the next hearing for December 17 and instructed Thomas to submit his waiver application with the immigration court by December 7; counsel waived written notice of the hearing. Thomas submitted the application to the INS (not the court) on December 11.

The final hearing on December 17 was scheduled to commence at 9:00 a.m. When no one appeared, the immigration judge held the hearing *in absentia*. He stated:

> This matter was set over to this morning at nine in the morning for a hearing on an application for 212(c) waiver; the Respondent being a lawful permanent resident of the United States since April 27, 1980. The Respondent has not submitted to the Court a waiver application, Form I–191, nor is the Respondent or his attorney present in court at this time. It is now nine nineteen in the morning. We've heard nothing from the Respondent or his attorney as to the reasons for their failure to appear here this morning. Deportability has been established by clear, convincing and unequivocal evidence as required by law. The Respondent is not present to make or establish eligibility for the relief which he indicated he would be pursuing. It will be the Order of the Court that the Respondent be deported from the United States to Trinidad on the basis of the charge obtained in the Order to Show Cause.

Thomas and counsel turned up approximately ten minutes later. According to Thomas, the judge conducted an off the record discussion with counsel. At this time, the judge declined to hear the matter on the ground that counsel had failed to contact the court concerning his tardiness. Thomas then filed, on December 22, a motion to reopen and reconsider. In it, he argued that counsel had thought that the waiver application was to be "presented" at the hearing itself. As for the late appearance at the December 17 hearing, Thomas claimed that he and his attorney had crossed signals: Thomas believed they were to meet at 9:00 a.m. at the courthouse and counsel believed that Thomas would meet counsel at counsel's office to copy some material prior to going to court.

Before the judge ruled on the motion to reopen, a notice of appeal to the Board of Immigration Appeals was filed. It contained essentially the same arguments as the motion to reopen and reconsider—that tardiness should not be equated with a "failure to appear." Counsel added the observation that since the judge had set aside two hours for the hearing, his and Thomas's slightly late appearance should not determine Thomas's immigration status.

The Board dismissed the appeal. It first noted that the filing of the notice of appeal divested the immigration judge of jurisdiction to rule on the motion. As a result, the record before the judge at the time he rendered his *in absentia* decision, which is the record the Board reviews on appeal, contained *no* explanation for Thomas's absence. On such a record, the Board held, the judge properly conducted the hearing *in absentia*.

The Board then treated the motion to reopen as a motion to remand. It noted that the standards for a remand were the same as the ones for a reopening in cases concerning *in absentia* hearings; that is, the alien must establish reasonable cause for his failure to appear. The Board determined that the explanation in Thomas's brief did not establish reasonable cause. It first pointed out that there was no affidavit from petitioner concerning the events in question and that counsel's statements in the brief did not constitute "evidence." *See* 8 C.F.R. § 3.8(a) ("[m]otions to reopen ... shall be supported by affidavits or other evidentiary material").

Nonetheless, the Board went on to address, and reject, the merits of petitioner's

arguments as set forth in the brief. It stated:

> There has been no explanation forthcoming as to why, if the respondent did go straight to the courtroom as alleged, ... he was unable to appear himself in a timely fashion, albeit without counsel. On appeal, the respondent, through counsel, asserts that mere tardiness, as opposed to failing to appear at all without reasonable cause, does not justify the immigration judge's proceeding *in absentia*. We disagree. In order to ensure the efficient administration of immigration proceedings, we do not find it appropriate to require the immigration judge, court personnel, and the Service attorney, to wait at the courtroom for the period allotted for the hearing before proceeding *in absentia*. If the alien arrives late after a decision has already been rendered, and demonstrates reasonable cause for his tardiness, the proceedings may be reopened. Absent a showing of reasonable cause, as is true in this case, the tardiness constitutes negligence on the respondent's part and reflects a lack of regard for his obligation to appear for his deportation hearing as scheduled.

BIA Decision, at 4.

## DISCUSSION

■ The Board's decision whether to remand Thomas's case for a hearing is discretionary. *See Holley v. INS*, 727 F.2d 189, 190–91 (1st Cir.1984). Accordingly, we review such a decision to determine only whether it was arbitrary, capricious, or an abuse of discretion. *Id.* As with denials to reopen deportation hearings, we must affirm the Board's decision not to remand unless it " 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis....' " *LeBlanc v. INS*, 715 F.2d 685, 693 (1st Cir.1983) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

The law concerning *in absentia* hearings is fairly straightforward. 8 U.S.C. § 1252(b) provides:

> If any alien has been given a reasonable opportunity to be present at a proceeding under this section, and without reasonable cause fails or refuses to attend ... such proceeding, the special inquiry officer may proceed to a determination in like manner as if the alien were present.

Under this statute, "[a]n *in absentia* deportation is legitimate if the alien had a reasonable opportunity to be present and failed to provide reasonable cause for his absence." *Maldonado–Perez v. INS*, 865 F.2d 328, 333 (D.C.Cir.1989); *see also Sewak v. INS*, 900 F.2d 667, 672 (3d Cir.1990) (alien may not complain if he has notice of the hearing and voluntarily fails to appear).

■ Basically, the requirement that an alien be given a "reasonable opportunity" to be present at a deportation hearing is satisfied so long as the alien receives notice of the date and place of the hearing. *See, e.g., Sewak*, 900 F.2d at 673 (notice of hearing provided to attorney satisfies "reasonable opportunity" requirement so long as attorney had been authorized to act on alien's behalf); *Maldonado–Perez*, 865 F.2d at 333 (where alien and counsel had two-month notice of date of hearing, alien had a reasonable opportunity to be present); *Patel v. INS*, 803 F.2d 804, 806 (5th Cir.1986) (INS provided reasonable opportunity where alien and attorney received notice of hearing).

■ Although there is no question that Thomas received notice of the hearing over five months before its scheduled date, he nonetheless argues on appeal that by not proceeding with the hearing once he and his attorney appeared, the immigration judge essentially denied him a "reasonable opportunity to be present." We first note that this argument was not presented to the Board. As such, it technically is waived. *See* 8 U.S.C. § 1105a(c) (court shall not review deportation order unless alien has exhausted administrative remedies). The exhaustion doctrine bars consideration of "particular questions not raised in an appeal to the Board." *Alleyne v. INS*, 879 F.2d 1177, 1182 (3d Cir.1989); *accord Sewak*, 900 F.2d at 670–71.

■ Even were we to consider the issue, we find it without merit. Thomas relies on *Matter of Vasquez*, 8 Imm.Law and Proc.Reporter B1–42 (1990). In *Vasquez*, the immigration judge had scheduled two hearings for the same time. When the alien and his attorney had not appeared twenty minutes after the time set for the hearing, the immigration judge first ascertained that no one had contacted the court or the INS attorney. He then held an *in absentia* hearing.

The Board remanded to ensure that the alien received a "reasonable opportunity to be present at a hearing on the merits of his asylum application." The Board pointed out that the alien, his counsel and the witnesses were all present at the proper time. According to counsel, he had not made his presence known to the immigration judge because he did not want to interrupt the other hearing that had been scheduled for the same time. Given the scheduling problems, the Board determined that "it would not have been unreasonable for the immigration judge to have ascertained whether [the alien and his counsel] were outside the hearing room at the conclusion of the other hearing." It also noted that such action would not have prejudiced the immigration judge's interest in "prompt and timely adjudications in deportation proceedings...."

Thomas's situation is distinguishable. Unlike *Vasquez*, Thomas and his attorney were *not* present outside the courtroom at the specified time. Thus, even had the judge sent his clerk to check outside the courtroom, as the *Vasquez* case suggested, such a gesture would have produced no results. As for contacting the clerk about being late, the attorney in *Vasquez* might reasonably have thought it unnecessary; he and his client were in fact present on time and to counsel's knowledge, the other simultaneously-scheduled case still was ongoing. That is, counsel in *Vasquez* reasonably might have believed, given these circumstances, that he would be notified when the other case had ended.

Here counsel apparently was in his office at 9:00 a.m. Although the brief asserts that "[c]ounsel's office had earlier contacted the Judge's office telephonically to see if [Thomas] had appeared," Thomas's Brief at 6, there is no evidence concerning exactly when this call was placed. Also, there is no indication that counsel's office informed the judge's chambers of the misunderstanding concerning where counsel was supposed to meet Thomas and the certain consequence that they would be late. Indeed, according to the immigration judge, counsel had *never* contacted the judge's chambers.

Given the above, we cannot say that the Board's actions in refusing to remand the matter and in dismissing the appeal were arbitrary, capricious or without a rational basis. As the Court of Appeals for the District of Columbia Circuit has said, "[T]he BIA, like other agencies in the modern administrative state, has a keen interest in securing the orderly disposition of the numerous claims which enter the vast apparatus of the INS." *Reyes–Arias v. INS*, 866 F.2d 500, 503 (D.C.Cir.1989). Given these institutional concerns and the deferential standard of review we must use, "it would be extravagant for a court which so vigorously enforces its own rules, including deadlines, to condemn the BIA as having abused its broad discretion in not providing [the alien] with [another] hearing." *Id.*

Accordingly, the petition for review is *denied.*

BREYER, Chief Judge, (dissenting).

It seems to me that we should remand this case. The papers before us reveal that, if Thomas had received his hearing, he might have convinced the immigration judge to recommend that he not be deported. On the one hand, the crime for which he served four months in prison, assault with a baseball bat, was serious. On the other hand, it did not involve drugs, he has had no other recorded misbehavior for seven years; he has lived in this country for twelve years; he helps to support his mother and two siblings who live here; and he has supporting affidavits from his employer and others who know him, which suggest rehabilitation. Moreover, his tardi-

ness at his hearing did not significantly interfere with the immigration judge's ability to conduct it. He was approximately thirty minutes late; the immigration judge had scheduled two hours for the hearing. Finally, deportation, as is obvious, is a very severe, very stringent consequence.

Given the severity of the consequence, the minimal procedural interference, and the serious claim for relief from deportation, in my view, the Board of Immigration Appeals acted arbitrarily in refusing to order a new hearing.

I dissent.