**NEW YORK STATE ENERGY RE-
SEARCH AND DEVELOPMENT
AUTHORITY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY
COMMISSION, Respondent, Long Lake
Energy Corporation, Intervenor.**

No. 83–1869.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 9, 1984.

Decided Oct. 19, 1984.

Thomas E. Mark, New York City, with whom G.S. Peter Bergen, New York City, and Howard A. Jack, Albany, N.Y., were on the brief for petitioner.

Arlene Pianko Groner, Atty. Federal Energy Regulatory Commission, Washington, D.C., with whom Stephen R. Melton, Acting General Counsel, and Barbara J. Weller, Deputy Sol., Washington, D.C., were on the brief for respondent.

Marvin S. Lieberman, Somerville, N.J., and Ann L. Rasenberger, Washington, D.C., were on the brief for intervenor.

Before MIKVA, BORK and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

The New York State Energy Research and Development Authority ("NYSERDA") challenges a ruling by the Federal Energy Regulatory Commission ("FERC" or the "Commission") rejecting NYSERDA's application for a license for the Phoenix Hydroelectric Project, Project No. 6806–000. FERC rejected NYSERDA's application on the ground that it was not timely filed at the Office of the Secretary as required by FERC's Rule 2001. *See* 18 C.F.R. § 385.-2001 (1983). This rule was promulgated and took effect while NYSERDA's comparative licensing proceeding was pending. NYSERDA maintains that its application was properly filed under the predecessor to Rule 2001 and that this predecessor rule should have been applied here in the interest of justice. We agree with NYSERDA and conclude that FERC's ruling was arbitrary and capricious. We therefore reverse and order FERC to deem NYSERDA's application timely submitted to the Commission.

## I.

NYSERDA is a state authorized public benefit corporation, N.Y.Pub.Auth.Law § 1852.1 (McKinney 1981), which seeks to promote the "development and utilization of safe, dependable renewable and economic energy sources." N.Y.Pub.Auth.Law § 1850–a (McKinney 1981). As a political subdivision of the State of New York, NYSERDA is recognized to be a "municipality"

within the meaning of section 3(7) of the Federal Power Act, 16 U.S.C. § 796(7) (1982). NYSERDA has total assets of $14,917,000 and has previously filed at least five license and permit applications with FERC. All of those applications were properly filed and have been accepted.

FERC is the agency which Congress has empowered to license the development of the nation's water resources. 16 U.S.C. § 791a *et seq.* (1982). Recently, FERC has received over two thousand license applications a year from persons and organizations seeking to operate small scale hydroelectric projects. In order to manage its overwhelming caseload, FERC has adopted strict filing deadlines and procedures in the small scale hydro area.

On October 31, 1981, the Long Lake Energy Corporation ("Long Lake") applied for a license to construct and operate a hydroelectric power project to be known as the Phoenix Project. The proposed project was to be situated on the Oswego River in Oswego and Onondaga Counties, New York. On April 14, 1982, FERC published an official notice of Long Lake's application in the Federal Register. 47 Fed.Reg. 16,848 (1982). That notice expressly directed that all competing applications should be mailed to the following address:

Kenneth F. Plumb, Secretary

Federal Energy Regulatory Commission

825 North Capitol Street, N.E.

Washington, D.C. 20426

Joint Appendix ("J.A.") at 2.

In response to the FERC notice of April 14, NYSERDA decided to file a competing license application for the Phoenix Project. NYSERDA informed FERC of its intent to file such an application on June 23, 1982, and under FERC's filing regulations NYSERDA's application thus became due by October 25, 1982. *See* 18 C.F.R. § 4.33(c) (1982). NYSERDA thus had actual notice that its application was due in the Secretary's Office at 825 North Capitol Street on October 25.

NYSERDA hired an engineering firm, Tippetts-Abbett-McCarthy-Stratton

("TAMS"), to make the necessary studies and all appropriate filings with the Commission regarding the Phoenix Project. TAMS had been working on NYSERDA's application since January 20, 1982 and was therefore aware of the April 14 notice that FERC had published in the Federal Register. J.A. at 15. TAMS had extensive experience in hydroelectric project engineering; however, it had never before filed documents with FERC. In attempting to ascertain what were the Commission's procedural rules, TAMS first consulted a guide to the Commission's rules known as the "Blue Book" and published by the Commission in April, 1982. *See* FERC, *Application Procedures for Hydropower Licenses, Exemptions and Preliminary Permits* (Apr. 1982).

The Blue Book's discussion of the filing regulations did not make reference to the Commission's new Rules of Practice and Procedure, 18 C.F.R. Part 385 (1983). In particular, the Blue Book did not mention the revised rule at issue here, Rule 2001, 18 C.F.R. § 385.2001 (1983). While it did refer to this rule's more general predecessor, the Blue Book did not include the text of that provision. Because of these lacunae in the Blue Book, TAMS endeavored to obtain clarification of FERC's submission and filing requirements from the staff of the FERC's Division of Hydropower Licensing.

Mr. Robert Bell, the member of the Division of Hydropower Licensing responsible for the Phoenix Project, directed TAMS to the Docket Section of the Office of the Secretary. This Section told TAMS that it should deliver the NYSERDA license application to the Division of Hydropower Licensing. J.A. at 15–16. Specifically, the Docket Section instructed TAMS to deliver the license application to the following address:

FERC

Division of Hydropower Licensing

Railway Building

400 1st Street, N.W.

Washington, D.C.

202–376–9171

*Id.* When TAMS called the telephone number it had been given, an employee of the Division of Hydropower Licensing confirmed these directions. Moreover, the same FERC employee informed TAMS that the application would be deemed timely and properly submitted if it were received before closing time at the above address. *Id.* at 16–17.

On October 22, 1982, or three days before the due date, a TAMS messenger delivered the application by hand to the Division of Hydropower Licensing. As FERC's rules require, TAMS submitted an original and fourteen copies of the application. A cover letter attached to the application was addressed to FERC Secretary Kenneth F. Plumb and listed the proper address to which the application should in fact have been delivered. TAMS made timely service of the application on all other parties to the proceeding. An additional copy of the application was delivered to Mr. Bell on October 22, and this copy was ultimately routed to the Office of the Secretary through FERC's internal mail. However, the application was delayed in transit within FERC, and it was not until October 27 that the Office of the Secretary stamped the application as "received." J.A. at 18–19.

At some later date, NYSERDA's application was returned to the Division of Hydropower Licensing, which rejected it as untimely. On November 30, 1982, the Deputy Director of the Office of Electric Power Regulation wrote a letter rejecting NYSERDA's application and stating that NYSERDA should direct all inquiries regarding the rejection to Mr. Bell. When TAMS contacted Mr. Bell, he indicated for the first time that NYSERDA's application should have been submitted to the Office of the Secretary and not to the Division of Hydropower Licensing. *See* J.A. at 21. In its Order Denying Appeal and Order Denying Rehearing, FERC relied on NYSERDA's failure to comply with Rule 2001, a new rule governing filings with the Commission which had gone into effect on Au-

gust 26, 1982. 18 C.F.R. § 385.2001 (1983). Rule 2001 provides:

> (a) *Filings with the Commission:* (1) Except as otherwise provided in this chapter, any document required to be filed with the Commission must comply with Rules 2001 to 2005 and must be submitted to the Secretary by:
>
> (i) Mailing the document to the Secretary, Federal Energy Regulatory Commission, 825 North Capitol Street, NE., Washington, D.C. 20426; or
>
> (ii) Hand delivering the document to Room 3110, 825 North Capitol Street, NE., Washington, D.C.
>
> (2) Any document is considered filed on the date stamped by the Secretary, unless the document is subsequently rejected. Any document received after regular business hours is considered filed on the next regular business day.

18 C.F.R. § 385.2001 (1983).

In rejecting NYSERDA's application, FERC declined to act pursuant to Rule 101(c)(2), which allows it to apply its prior Rules of Practice and Procedure, 18 C.F.R. Part 1 (1982), to proceedings pending on August 26, 1982, where such use is warranted "in the interest of justice." 18 C.F.R. § 385.101(c)(2) (1983). The preamble to FERC's new Rules clarifies that the Commission may exercise this discretionary authority "in light of any inequities that may result from the imposition" of the new Rules. 47 Fed.Reg. 19,014, 19,016 (1982). FERC gave no reasons for its refusal to employ Rule 101(c)(2). NYSERDA has appealed FERC's denial of its application claiming that the Commission acted arbitrarily and capriciously. We agree.

## II.

If NYSERDA's application were untimely filed under both the old and the new rule, there would be no question about the legality of FERC's action in rejecting it. Therefore, in reviewing the Commission's behavior, we take up first the question of whether NYSERDA's application was properly filed under the old rule. Rule 2001

superseded 18 C.F.R. § 1.14(a) (1982), which provided as follows:

> The filing of written applications ... with the Commission as required or allowed by these rules ... shall be made by filing them with the Office of the Secretary of the Commission in Washington, D.C. *Any such papers must be received by the Commission in Washington, D.C. within the time limit*, if any, for such filing.

18 C.F.R. § 1.14(a) (1982) (emphasis added).

Unlike the new rule, which states that a submission is not considered filed unless "stamped by the Secretary," the old rule provided that a submission was timely if it was in the possession of the "Commission in Washington, D.C." within the applicable time limit. NYSERDA's application was addressed to the "Office of the Secretary" and was received by the Commission's Washington office a full three days before the relevant deadline. Accordingly, it would appear that NYSERDA's application satisfied the literal terms of the old rule and was therefore timely filed. This conclusion is borne out by the relevant case law.

The leading case was decided by this court and concerned an application for rehearing that did not arrive in the Secretary's Office until after the statutory deadline. *Dayton Power & Light Co. v. FPC*, 251 F.2d 875, 877 (D.C.Cir.1957). *See also Pressentin v. Seaton*, 284 F.2d 195, 198 (D.C.Cir.1960). We held that the application satisfied the deadline because the Commission's General Counsel received a single copy of the application on time and he was "the very official in charge of the proceedings." 251 F.2d at 877. In this case, NYSERDA submitted a copy of its application three days before the filing deadline to Mr. Robert Bell, the FERC official responsible for ruling on the Phoenix Project. Under *Dayton Power*, NYSERDA appears to have met FERC's deadline by timely filing its application with the FERC official in charge.

The Commission itself has followed the *Dayton Power* rule in yet another case

presenting similar facts. Thus, in *Village of Elbow Lake, Minnesota v. Otter Tail Power Co.*, 46 F.P.C. 1363 (1971), an application for rehearing was deemed timely even though it was not received by the Secretary until a week after the deadline. Relying on *Dayton Power*, the Commission found it dispositive that Staff Counsel had received a copy of the application in a timely manner. Once again, this case suggests that NYSERDA's application was timely filed under the old rule since it was delivered to the FERC official in charge three days before the deadline.

NYSERDA's position is also supported by several cases that suggest that under the old rule late applications were often accepted where there had been either "substantial compliance" or where a good-faith effort to comply had been made. Thus in *Power Authority of New York*, 31 F.P.C. 962, 963 (1964), the Commission accepted a late application after holding that a document mailed to the Commission from New York City should be presumed received the next day. And in *Firman O. Gotzinger*, Project No. 5965–000, Notice Reinstating Appeal (Oct. 26, 1982), the Commission accepted a filing that arrived in the building on time, but was not processed and file stamped until the next day. In both of these cases, technical noncompliance with FERC deadlines was excused in part because there had been substantial good-faith compliance. Similarly, in cases involving other agencies, we have also sometimes required that late documents be accepted as timely. *See, e.g., Yohalem v. Washington Metropolitan Area Transit Commission*, 412 F.2d 1124 (D.C.Cir.1969); *Valley Broadcasting Co. v. FCC*, 237 F.2d 784, 787 (D.C.Cir.1956). Both *Yohalem* and *Valley Broadcasting* were cases where late filing parties had made a substantial good-faith effort to satisfy their deadlines.

In this case, NYSERDA's actions in hand-delivering the documents three days early clearly satisfy the requisite test of

substantial good-faith compliance.[1] We thus find that NYSERDA's application would clearly have been deemed timely under FERC's old rule. We now consider whether that result is affected by the implementation of the new FERC Rule 2001. This rule went into effect on August 26, 1982, while NYSERDA's application was being prepared.

Under the new rule, NYSERDA clearly missed the October 25 deadline. Rule 2001 requires both that applications be delivered to the Office of the Secretary and that they be stamped by the Secretary for the deadline to be met. However, Rule 2001 is qualified by a proviso which allows application of the old rule to proceedings pending on August 26, 1982. 18 C.F.R. § 385.-101(c)(2) (1983). This proviso authorizes application of the old rules "in the interest of justice" and for the purpose of correcting any "inequities that may result from the imposition" of the new rules. 47 Fed. Reg. 19,014, 19,016 (1982). Since NYSERDA's application was pending on August 26, we must consider whether FERC acted "arbitrarily and capriciously" by failing to invoke the proviso in this case.

Under the totality of the circumstances presented here, we conclude that FERC did act arbitrarily and capriciously by failing to invoke its proviso and accept NYSERDA's application. We reach this conclusion because numerous circumstances taken together weigh in favor of the petitioner. We consider it significant that (1) NYSERDA's application was timely submitted under the old rules; (2) the application was delivered three days before the deadline to Mr. Robert Bell, the FERC official in charge of the Phoenix Project; (3) the application was timely served on all interested parties; (4) the application would have been timely filed had it not been delayed for five days in FERC's internal mail; (5) senior FERC employees, who were questioned by the applicant, were themselves unaware of the new rules; (6) the applicant made a great effort to ascertain what the rules were and to comply with the information it received; (7) FERC's official guide to its own filing requirements failed to mention the new rules which in any event were not yet available in the Code of Federal Regulations; (8) the proviso to Rule 2001 contemplated problems such as this during the transition from the old to the new rules and provided for use of the old rules where warranted "in the interest of justice"; and finally (9) FERC has never given a plausible reason for refusing to apply the proviso.

When unpacked, FERC's position is that NYSERDA erroneously delivered its application three days early to the official in charge of the Phoenix Project when it should have been delivered instead to a file clerk in another office. Rejection of NYSERDA's application on these grounds is rough justice indeed; too rough to be countenanced.

Given these facts, we find it incomprehensible that FERC has refused to accept NYSERDA's application "in the interest of justice." FERC lawfully adopted the proviso agreeing to correct inequities resulting from the imposition of its new rules. And having lawfully adopted that proviso, FERC became obligated to apply it. *Service v. Dulles*, 354 U.S. 363, 372, 77 S.Ct. 1152, 1157, 1 L.Ed.2d 1403 (1957) (Harlan, J.); Note, *Violations by Agencies of Their Own Regulations*, 87 Harv.L.Rev. 629

---

1. FERC relies heavily on four orders that it issued in 1980 denying untimely petitions to intervene. Riceland Electric Cooperative, Inc., 13 F.E.R.C. (CCH) ¶ 61,146 (Nov. 19, 1980); *Arkansas Valley Electric Cooperative Corp.*, 13 F.E.R.C. (CCH) ¶ 61,150 (Nov. 20, 1980); Riceland Electric Cooperative, Inc., 13 F.E.R.C. (CCH) ¶ 61,151 (Nov. 20, 1980); Riceland Electric Cooperative, Inc., 13 F.E.R.C. (CCH) ¶ 61,152 (Nov. 20, 1980). FERC claims that these orders announced a policy of strict adherence to all of its application deadlines. We find these cases inapposite because the late applications in question were submitted as much as 32 days after the deadline had passed. In addition, FERC essentially rejected these applications because they were not submitted in good faith. By contrast, in this case NYSERDA's actions clearly demonstrate substantial good-faith compliance. *See Superior Oil Co. v. FERC*, 667 F.2d 1180 (5th Cir.1982).

(1974). This case clearly implicates all of the central concerns of the proviso. In fact, few cases could more clearly call for application of the proviso. We are therefore compelled to hold that FERC has ignored its own proviso and has thus acted illegally in rejecting NYSERDA's application. *See* 5 U.S.C. § 706(2)(A) (1982).

In so holding, we wish to emphasize that our conclusion is based on all of the nine circumstances present in this case and that no single factor alone dictates the outcome. We also stress that our holding rests upon the existence of a proviso that FERC put in place and thus obligated itself to apply where application is called for. For that reason we need not consider the general rule, or possible exceptions to it, that estoppel cannot be invoked against the government because of the acts of its employees. *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) (per curiam); *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) (Frankfurter, J.). Nor do we require an agency to publish every new regulation instantaneously in every one of its official publications. Rather, we hold that under all the circumstances of this case FERC ignored its own proviso limiting the application to old cases of the new, strict filing provisions of Rule 2001. Since this was unlawful, we order the Commission to deem NYSERDA's application timely filed. We, of course, express no opinion on the merits of the application.

*Reversed.*