514 A.2d 976

Eye & Ear Hospital and Presbyterian University Hospital, Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued June 10, 1986, before Judges CRAIG and BARRY, and Senior Judge BLATT, sitting as a panel of three.

*William C. Shaffner, Mansmann, Cindrich &
Huber,* for petitioners.

*Jeffrey P. Schmoyer,* Assistant Counsel, for respondent.

OPINION BY JUDGE BARRY, September 8, 1986:

This appeal results from an order of the Office of
Hearings & Appeals, Department of Public Welfare
(DPW), which adopted in its entirety the recommendation of a hearing officer that no error was committed by
DPW in its denial of certain reimbursement payments
sought by the petitioners, Eye & Ear Hospital and
Presbyterian University Hospital.

The sought-after reimbursements stem from care
provided by the two hospitals to thirty-four patients in
their shared "Short Procedure Unit" (SPU). This was a
new facility,[1] having commenced operation in June,
1984. In December, 1984 the hospitals, having provided medical services to certain Medicaid patients, submitted reimbursement requests for the services to
DPW under the recently inaugurated Diagnosis Relat-

---

[1] The purpose of such facility, as described by the hospitals, is
"to provide medically appropriate, yet resource and cost effective
services to individuals who require performance of a surgical procedure and some supervised recovery or other post-surgical services,
but who do not require overnight hospital admission." *Brief for
Petitioners* at 9. DPW has defined valid SPU services as those cases
requiring "(1) less than 24-hour care; and (2) use of inpatient hospital resources, especially an operating room; and (3) [i]n most cases,
general anesthesia." *Medical Assistance Bulletin* No. 11-84-16, dated August 28, 1984.

ed Group (DRG) payment (reimbursement) system.[2] Reimbursement was sought for services rendered from June, 1984 through October, 1984. DPW, however, refused to review the claims submitted for services rendered from August 31 through October 16 on the grounds that the hospitals' SPU had not been approved by the Department of Health (DOH).

At a hearing convened after this refusal, the hospitals argued that DPW had led them to believe that, under the new reimbursement system, DOH approval was not necessary, and that it was thus unfair and unreasonable to deny reimbursement. The hearing officer concluded that "it [was] not perfectly clear" that the hospitals' confusion was the fault of DPW, and hence upheld the denial. That decision was, in turn, adopted by the Office of Hearings & Appeals. From that order the petitioners have prosecuted the present appeal.

We first seek to clarify the rather confusing course of events presently involved which, we note, are not seriously in dispute. In the early portion of 1984 the hospitals were in the midst of constructing their new SPU, and initiated efforts to obtain DOH approval, a recognized prerequisite for medical assistance (MA) reimbursements under the pre-DRG system.[3] *N.T.* at 19-20. While attending a speech on April 11, 1984,

---

[2] That reimbursement system, the initiation of which prompted the involved controversy, reflected a "change from one that reimbursed hospitals on the basis of the costs they incurred in providing services, to a system of 'prospective payments' based on a number of artifically derived price formulas known as diagnostic related groups or 'DRGs' ". Horty, *The Changing Perception of the Hospital: A Prescription for Survival*, 24 Duq. L. Rev. 367, 371 (1986). *See also Pennsylvania Bulletin*, June 23, 1984 at 2185 (declaring purpose of new regulations governing DRG system).

[3] There is no debate that this was the rule under the abrogated cost-incurrence reimbursement policy, as the requirement was codified at 55 Pa. Code §1163.42 (now reserved).

however, a management employee of the hospitals allegedly heard Mr. Gerald F. Radke (Radke), Deputy Secretary of Medical Assistance, state that it was no longer necessary to have SPU's approved under the new system, and this apparently prompted the hospitals to discontinue their efforts to obtain DOH approval.

While DPW has at no time admitted that this statement was made, regulations promulgated during this same period seem to reflect the same regulatory position as that articulated in the alleged statement. These early pronouncements, the hospitals claim, *also* prompted them to discontinue their approval efforts. A proposed rule for the new DRG system, for example, published in the *Pennsylvania Bulletin* on February 18, 1984, provided as follows:

> Since the Department is defining [SPU] services as inpatient hospital services under the DRG reimbursement system, payment for services in a [SPU] will be on the same basis as that of any other inpatient hospital services. Services provided to a [MA] recipient in a [SPU] will be treated as an inpatient admission for [MA] payment purposes.

> [T]he Department finds that it is no longer necessary to separately identify [SPU's]. *The participation requirements for [SPU's] appearing [in] the current regulations have . . . been dropped from the proposed regulations.*

*Id.* at 578-79 (emphasis added). In addition, there was no mention of an approval requirement in the final DRG regulations published on June 23, 1984. *See Pennsylvania Bulletin,* June 23, 1984, at 2185-2233.

On August 28, 1984, however, DPW announced that, for DRG payments to be received for SPU treatments, DOH approval *was* necessary. *Medical Assistance Bulletin,* No. 11-84-16 (clarification bulletin). At

the same time, DPW, exercising its administrative power to waive its own rules, made the following declaration:

> [S]ince there has been some confusion over the definitions of valid SPU services, hospitals which have not submitted MA-87 forms for valid SPU services provided between July 1, and August 13, 1984, may submit forms [for services provided during such time] during the 30 days subsequent to the date this bulletin is issued.

Id.

At this point the hospitals immediately sought DOH approval of the SPU, which had been operating and accepting Medicaid patients since June. A DOH surveyor was not, however, available until October 17, and during this time the hospitals continued to accept Medicaid patients. On the day of the inspection the SPU received immediate approval.

As stated above, when the hospitals sought reimbursement under the DRG system, DPW refused to consider the claim forms stemming from treatments rendered after DPW issued its re-affirmance of the approval requirement in its clarification bulletin. Pursuant to its waiver declaration, however, DRG reimbursements *were* allowed for treatments rendered prior to that date.

The hospitals, in their appeal to this Court, continue their argument that DPW, having caused the confusion, has acted unfairly and unreasonably in denying reimbursement. DPW, for its part, argues in response that grounds for an estoppel do not lie, because any confusion with respect to the need to gain approval from DOH was not its fault.[4]

---

[4] It is to be noted that the hospitals do *not* argue that DPW should be *estopped* from enforcing the regulation. Indeed, the term

Our scope of review in the present matter is limited to a determination of whether necessary findings are supported by substantial evidence, whether an error of law was committed, or whether any constitutional rights have been violated. *Del Borrello v. Department of Public Welfare*, 96 Pa. Commonwealth Ct. 507, 510, 508 A.2d 368, 369 (1986). We reverse.

There is no serious disputing by DPW of the hospitals' claim that they were confused over the need for DOH approval; the disagreement centers, instead, on *who* was to blame for the confusion. DPW, in this regard, first argues that even though the earlier approval requirement was deleted at the inception of the DRG system, *other* regulations continued in force which should have alerted the hospitals to the need for approval. 55 Pa. Code §1101.42(a), notably, provides:

> In order to be eligible to participate in the Medical Assistance Program, Commonwealth-based providers must be currently licensed and registered or certified or both by the appropriate State agency. . . .

*Id.* Section 1163.41 of the same chapter, meanwhile, continued to provide that "[i]n addition to the participation requirements established in Chapter 1101 . . . general hospitals shall . . . (1) [b]e licensed by the Department of Health." *Id.* In addition, federal regulations continued to require that "MA covered treatment be provided in an approved site." *See* 42 C.F.R. §§440.10(a)(3)(ii), 440.20(a)(3)(i). Finally, DPW argues, the substantive DOH standards for SPUs went wholly

---

"estoppel" does not appear in petitioners' brief at all. Instead, as stated above, the hospitals argue only that DPW's application of the regulation is unreasonable and unwarranted under the facts of this case. As will be seen, we view that argument to more accurately address the circumstances of this case.

unaffected by DPW changes. *See* 28 Pa. Code §§119.41-119.45.

We are cognizant, of course, of the rule that those in the position of the hospitals, operating under and seeking the benefits of a government-funded program, must be charged with knowledge of the applicable regulatory scheme. *Divine Providence Hospital v. Department of Public Welfare,* 76 Pa. Commonwealth Ct. 188, 463 A.2d 118 (1983).[5] In *Divine Providence,* that rule precluded the hospital from successfully arguing that DPW was estopped from asserting an appeal time limitation after the latter's employees, mis-reading DPW's own regulations, unintentionally lulled the hospitals into believing that no appeal was necessary from certain portions of a DPW audit. We concluded:

> Because the hospital was in possession of the audit report and because the health care provider is charged with knowledge of the applicable DPW regulations, we conclude that the hospital could not establish reasonable reliance upon DPW's auditors' statements.

*Id.* at 192, 463 A.2d at 120. As to the public policy concern reflected in the rule, *see Heckler v. Community Health Services of Crawford County,* 467 U.S. 51, 63 (1984):

> Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law; respondent [the medical assistance provider] could expect no less than to be held to the most demanding standards in its quest for public funds. This is consistent with the general rule that those who

---

[5] *See also Mercy Hospital v. Department of Public Welfare,* 89 Pa. Commonwealth Ct. 192, 194-95 & n.2, 492 A.2d 104, 106-07 & n.2 (1985).

> deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law.

*Id.* (addressing diligence required of health care services provider so engaged under Part A of the Medicare program, 42 U.S.C. §§1395c-1395i-2 (1976 & Supp. V)).

However laudable the foregoing principle, which we in no wise retreat from, we think it inapplicable in the present controversy. Here DPW, in the course of implementing a new and complex reimbursement system, first *deleted* the original approval requirement and failed to include in the new regulations any mention of DOH approval, declaring, indeed, in its proposed regulations "[t]hat the participation requirements for [SPU's] . . . have . . . been dropped. . . ." As for the alternative statutory sources to which the hospitals are said to have been required to look, we note that the first three speak broadly to hospitals and medical services *in general.* DPW's proposed regulations, however, declared that DPW "finds that it is no longer necessary to separately identify [SPUs]"; in light of such a declaration of intent, we fail to perceive how the broader requirements were supposed to have alerted the hospitals to the need for approval. Further, while it is true that the DOH requirements themselves remained in effect, there is nothing in those requirements which suggests that compliance therewith is a prerequisite for provider reimbursement under the new DRG system.

We thus find unpersuasive DPW's argument that some sort of investigatory diligence on the hospitals' part either should have or could have obviated the confusion. Where an administrative agency affirmatively indicates, via public declaration, that a previously existing requirement is to be deleted, and then deletes it, and no other portion of the regulatory scheme exists which

can reasonably be said to have informed those regulated of the enduring force of the regulation, the agency cannot be heard to attribute the source of an attendant confusion elsewhere. We necessarily conclude, then, that DPW erred in determining that the source of the confusion lay without its own realm.[6]

As we have stated, however, DPW, without admitting it was at fault, *waived* the approval requirement from the period of the deletion, or thereabouts, until the time of the clarification bulletin issued in late August. DRG reimbursement was denied only for care provided after that point and until DOH approval was finally secured. As the hospitals acknowledge that after the clarification bulletin they *knew* of the approval requirement, DPW argues that the hospitals acted unreasonably in continuing to accept Medicaid patients with the intent of receiving DRG reimbursement. At this point, DPW asserts, the hospitals can hardly complain of being misled as to the rule in force.

The issue, then, is not whether DPW is estopped from enforcing its regulation. Instead, the issue is whether DPW has abused its discretion in not applying its waiver provision, as it did for two months, to the care provider claims submitted for treatments rendered after its clarification bulletin. We realize, of course, that "[t]he imposition of sanctions . . . is left largely to the

---

[6] That conclusion was apparently reached because of the hospitals' *admitting* that they initially believed approval was necessary. *Hearing Officer Adjudication* at 3. And, indeed, the record supports the proposition that the hospitals had such a belief. In DPW's Exhibit "E", for example, the hospital indicated that in early 1984 it was told to contact DOH for approval. As is also clear, however, from that Exhibit (a letter from Presbyterian University Hospital's financial analyst) such information was received *before* implementation of the DRG system and DPW's affirmative deletion of the approval requirement—in short, acts which were essential contributors to the confusion.

discretion" of the administrative agency. *Girard Prescription Center v. Department of Public Welfare,* 90 Pa. Commonwealth Ct. 488, 494, 496 A.2d 83, 86 (1985). That being the rule, we will not "disturb the exercise of that discretion absent proof of fraud, bad faith or manifest and flagrant abuse of discretion." *Nolf v. Department of Public Welfare,* 69 Pa. Commonwealth Ct. 398, 401, 452 A.2d 574, 575-76 (1982).

Here, however, DPW has "reserve[d to it] the power to waive [its] own self-imposed requirement[ ] to 'do justice' when necessary."[7] Raven-Hansen, *Regulatory Estoppel: When Agencies Break Their Own "Laws",* 64 Texas L. Rev. 1, 41 (1985). In the presence of such power, and having first created the confusion, we believe that DPW was obliged, lest it commit a manifest and flagrant abuse of discretion, to exercise that waiver

---

[7] DPW's waiver of the regulations for the months of July and August was effected, according to its brief, pursuant to 1 Pa. Code §35.18, which refers to the procedure to be followed when petitioning for "issuance, amendment, waiver, or repeal of regulations." *Id. See also id.* at §33.61(a):

> Pleadings, submittals, or other documents which are subject to rejection under §31.5 (relating to communications and filings generally) may be accompanied by a request . . . for waiver of . . . any regulation or requirement with which the document tendered is in conflict or does not conform.

*Id.*

The record does not disclose any petitioning of DPW for the waiver which was in fact allowed in the present case. Such petitioning is, based on our reading of the regulation, seemingly contemplated before the agency can act. At the hearing, however, a DPW official testified that there was general confusion among providers *in general* with respect to the approval requirement, and that this prompted the waiver, we infer, to be granted *sua sponte. See Hearing Transcript* at 27. In light of that self-initiated action, we find meritless DPW's argument that the hospitals, if they desired reimbursement for the treatments in question, need necessarily to have petitioned for a waiver. *Cf. Brief for Respondent* at 17-18.

power to embrace the additional time which it took for the hospitals to obtain DOH approval. *Cf. Tony Grande, Inc. v. Workmen's Compensation Appeal Board (Rodriguez)*, 71 Pa. Commonwealth Ct. 566, 569, 455 A.2d 299, 299-300 (1983) (where proper grounds lay for appeal *nunc pro tunc* from referee to Workmen's Compensation Appeal Board, and Board failed to exercise power to accept appeal, this court ordered that appeal be accepted by Board and decided on its merits). *Cf. also New York State Energy Research & Development Authority v. FERC*, 746 F.2d 64 (D.C. Cir. 1984) (per BORK, C.J., where FERC adopted waiver regulation in order to correct inequities which could result from imposition of its own new filing rules, *held:* agency acted arbitrarily and capriciously in applying new rules to preclude defectively filed application, where defect stemmed from imposition of new rules and applicant acted in good faith; court orders agency (1) to apply waiver provision and (2) to deem application timely filed).[8] *See generally* Raven-Hansen, 64 Texas L. Rev. at 41-42 & nn.218-22.

---

[8] In the cited federal case the agency's waiver provision was narrowly drafted and obviously intended for application to situations precisely such as that with which the agency was presented in the case. In light of that fact, the Court ordered the application of the waiver, declaring, indeed, that the agency, "ignor[ing] its own proviso . . . has thus acted *illegally* in rejecting [the] application." 746 F.2d at 69 (emphasis added).

Needless to say, we do not declare by our holding that DPW acted illegally in not applying its waiver provision, given the general nature of that power and the apparent ordinary requirement that, under the provision, a party must request the waiver. Nonetheless, where, as here, DPW has *sua sponte* implemented the waiver in the face of confusion which the agency itself created, we think that an abuse of discretion is manifestly evidenced, and that DPW is obliged to apply the provision.

Crucial to this obligation, of course, is the undisputed fact that once the hospitals were apprised by DPW of the requirement, they acted with due diligence to obtain the approval. The alternative, expecting the hospitals to have refrained from continuing to treat Medicaid patients until the completion of the inspection process, we think entirely unsatisfactory, in light of the fact that DPW was at the root of the initial delay.[9]

In so concluding we endeavor to emphasize that our decision rests on the particular factual matrix of the present case. Key elements within that pattern include DPW's creation of the confusion, its acknowledgment of confusion by way of a partial waiver, and the hospitals' diligence in seeking approval for their facility once the regulatory policy was fully elucidated. Of equal importance, however, is the fact that there has been no allegation that the facility in question was deficient in any way. We would be loath to declare an abuse of discretion in the face of such an allegation, as we might well be, indeed, in the presence of any meritorious policy argument against judicially enforcing the waiver under the facts of the present case. None having been advanced by DPW, we reverse.

---

[9] As to the subsequent, approximately six-week delay, there is agreement between the parties that this was attributable to the normal time required for DOH to undertake its inspection and approval efforts. *Compare Brief for Respondent* at 17 ("DPW does not dispute that once Petitioners initiated action to procure DOH approval they [—petitioners—] did nothing to delay the process."), *with Brief for Petitioners* at 16 ("Although arrangements for a survey of the SPU were made by telephone prior to September 7, the [DOH] surveyor did not arrive to conduct the necessary inspection until October 17."). The record supports this conclusion, *see Hearing Transcript* at 14, 28-29, and was apparently taken for granted by the hearing examiner.

### ORDER

Now, September 8, 1986, the order of the Department of Public Welfare, Office of Hearings & Appeals, Case Numbers 02K0050 and 02K0068, dated May 29, 1985, is hereby reversed.