Jose Salvador
REYES–ARIAS, Petitioner,

v.

IMMIGRATION & NATURALIZATION
SERVICE, Respondent.

No. 87–1065.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 27, 1988.
Decided Jan. 31, 1989.

John R. Fitzpatrick, Jr., with whom Monica C. Yriart was on the brief, for petitioner.

Steven L. Barrios, Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, was on the brief, for respondent. Lauri Steven Filppu and Michael P. Lindemann, Attorneys, Dept. of Justice, also entered appearances for respondent.

Before STARR, BUCKLEY and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

Concurring opinion filed by Circuit Judge D.H. GINSBURG.

STARR, Circuit Judge:

This petition for review challenges the decision of the Board of Immigration Appeals affirming an immigration judge's denial of a motion to reopen deportation proceedings. For the reasons that follow, we uphold the Board's decision and deny the petition.

I

Jose Reyes–Arias is a native of El Salvador. He came to the United States illegally in 1983, where he was apprehended in the Texas border community of Brownsville. Deportation proceedings were instituted in

May 1983 through INS' issuance of an Order to Show Cause alleging that Mr. Reyes–Arias had entered the United States without inspection in violation of section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1982). Shortly thereafter, Mr. Reyes–Arias was transferred to Miami, where he filed a request for asylum, Form I–589, *see* 8 CFR § 208.10(a) (1983), alleging, among other things: "I had a gun put to my head while I was driving a bus by the guerrillas. * * * My wife has been killed by the guerrillas and they are after me." Administrative Record (A.R.) at 37. *See also id.* at 39. ("[The guerrillas] kidnapped her and killed her in the street leaving Leftist literature over her body."). *Id.* at 39 (Addendum to Form I–589). Mr. Reyes–Arias further indicated that he had first gone to Mexico and then to Texas in order "to be free and begin a new life." A.R. at 37 (Form I–589).

As required by the asylum procedures established by the Attorney General, 8 C.F.R. § 208.10(b), the Office of Immigration Judge transmitted a copy of Mr. Reyes–Arias' asylum request to the Director of the Bureau of Human Rights and Humanitarian Affairs of the Department of State for the purpose of securing the Bureau's advisory opinion. A.R. at 42. The Director of that Bureau's Office of Asylum Affairs responded shortly thereafter, stating (in a form letter) as follows:

> We have carefully reviewed the information submitted as part of the application. On this basis, we believe that the applicant has failed to establish a well-founded fear of being persecuted in El Salvador on account of race, religion, nationality, membership in a particular social group, or political opinion, as provided in the United Nations Convention and Protocol Relating to the Status of Refugees. Consequently, the applicant does not appear to qualify for asylum.

*Id.* at 40. In the meantime, Mr. Reyes–Arias had secured his release from custody on bond and had situated himself in Maryland (to be near his cousin, who served as bond obligor). Accordingly, Mr. Reyes–Arias' hearing, which had been scheduled to be held in Miami in June 1983, was postponed indefinitely, and a motion to change venue to Washington, D.C. was granted in July 1983. A.R. at 32.

Thus matters stood until June 1985. We pause here to say that the Administrative Record in this case is not a model of clarity or completeness. It appears, however, and in any event is not contested, that a hearing was scheduled on June 5 before an immigration judge in Washington, D.C. (or possibly Arlington, Va.). On that occasion, a continuance until July 2, 1985 was granted at Mr. Reyes–Arias' request.

On that fateful day, petitioner did not appear. His counsel, however, was present. At the proceeding, Immigration Judge Arrowsmith, based on the record before her, determined that Mr. Reyes–Arias was in fact deportable. On a standard form, with handwritten notations rounding out the operative findings and conclusions, the following language was set forth in the decision:

> Upon the basis of the evidence of record we find that it has been established by evidence which is clear, convincing and unequivocal that [Mr. Reyes–Arias] is deportable on the charges in the Order to Show Cause.

Oral Decision of the Immigration Judge at 1 (contained in the Administrative Record, but unpaginated).

Then, in language setting forth facts not in dispute, but an ultimate conclusion which is very hotly disputed, Judge Arrowsmith went on in the standard form to say:

> The respondent having been absent from his/her hearing today, following notification to his/her counsel who is unable to locate him/her and the respondent not having notified us or his/her counsel who is unable to locate him/her and the respondent not having notified us or his/her representative of his/her change of address, we find that he/she is failing to prosecute his/her application(s) for *asylum and withholding of deportation.*

*Id.* (handwritten portions emphasized). Accordingly, Judge Arrowsmith set forth the following conclusion in her own hand: "The application for asylum and withholding of deportation are denied for lack of prosecution." *Id.*

The order went on to allow Mr. Reyes–Arias voluntarily to depart the United States on or before August 2, 1985 and provided that if petitioner chose not to avail himself of that alternative, respondent "shall be deported from the United States to *Costa Rica.*" *Id.* If the latter country advised the Attorney General that it was unwilling to accept petitioner, however, the order directed his deportation to El Salvador. *Id.*

Mr. Reyes–Arias, apparently unaware of the order, did not depart. Nor did he reinitiate contact (or apparently otherwise communicate) with his counsel until January 1986. Thereupon, counsel for petitioner filed with the immigration judge a motion to reopen the proceedings. A.R. at 15–16. The motion and supporting papers represented, in effect, that petitioner had failed to keep his counsel advised of his address and that reliance had been placed on petitioner's cousin-obligor for maintaining contact and communication with Mr. Reyes–Arias' attorney (and INS). Particular emphasis was placed on Mr. Reyes–Arias' relative lack of education, his unfamiliarity with the English language and INS procedures, and his assertedly strong case of asylee status. *Id.*

Nothing happened. Subsequently, in October 1986, counsel wrote to the immigration judge requesting a ruling on the motion. The motion was denied in December 1986, but notice of the denial was (mistakenly) not sent to counsel. Finally, after yet another administrative foul-up (a letter indicating, wrongly, that petitioner was to appear before an immigration judge in February 1987), the air was cleared, unfavorably for petitioner, by his finally being informed of the earlier (December 1986) decision denying the motion to reopen. A.R. at 12, 29. An appeal of that order was promptly taken to the Board of Immigration Appeals. In a decision dated January 25, 1987, the BIA denied the appeal on the ground that respondent had "failed to furnish adequate justification for his absence at the hearing of this case." A.R. at 2. This petition for review followed.

## II

■ It is undisputed that Mr. Reyes–Arias, but for his asylum claim, was indeed properly and lawfully deportable. In fact, as his counsel commendably reiterated at oral argument, deportability was not even contested in this case. Accordingly petitioner stood to remain in the United States if but only if he could establish his bona fides as an asylee under the Refugee Act. *See* 8 U.S.C. § 1101(a)(42) (1982) (defining "refugee"); 8 U.S.C. § 1158(a) (1982) (establishing asylum procedures and linking refugee and asylee status). Petitioner, however, objects to the fact that a finding of deportability was entered without adjudicating the merits of his asylum claim. As petitioner sees it, the asylum regulations promulgated by the Attorney General under 8 U.S.C. § 1158(a) entitle asylum applicants to an INS hearing.

The pertinent provision states that:

The applicant shall be examined in person by an immigration officer or judge prior to adjudication of the asylum application.

8 C.F.R. § 208.6 (1988).

In our view, petitioner reads far too much into the regulation. Here, of course, the IJ did not *adjudicate* the asylum claim; rather, she dismissed it at the threshold for failure to prosecute. We see nothing in the regulation that prevents the immigration judge from determining that, by failing to appear at the designated time, petitioner abandoned his asylum claim.

■ That being so, the real bone of contention between the parties is whether, despite his absence from the second, continued hearing (in July 1985), Mr. Reyes–Arias is entitled—now—to a hearing on his asylum claim. This translates into the issue whether the immigration judge (or, more precisely, the BIA), abused her (or its) discretion in refusing to reopen the

proceedings. In this regard, petitioner emphasizes (as we previously mentioned) that his absence from the hearing was neither willful nor deliberate. That is, as the reader will recall, Mr. Reyes–Arias protests that his lack of education and unfamiliarity with the English language and INS procedures yielded the unfortunate result of his not being made aware of the critical hearing date. Petitioner stresses that, at least under these particular circumstances, actual knowledge by the asylum claimant, rather than actual knowledge by the claimant's counsel, should be required.

We disagree. The standard for overturning the BIA's decision is a singularly daunting one. As the Supreme Court has recently reminded us, the BIA's decision declining to reopen deportation proceedings is subject to review only for abuse of discretion. *INS v. Abudu*, 485 U.S. 94, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988). Here, it cannot reasonably be gainsaid that the BIA, like other agencies in the modern administrative state, has a keen interest in securing the orderly disposition of the numerous claims which enter the vast apparatus of the INS. Indeed, notwithstanding various bumps and bruises (delay, mismailing, and the like) that occurred along the way, the pillar of procedural regularity stands fully intact in this case.[1] The process here was not a pretty one, but it was a fair one consistent with law. Petitioner was at all relevant times represented by (more than one) counsel who, from all that appears, competently represented his interests. For its part, INS suspended deportation proceedings pending resolution of the asylum claim and repaired to the State Department for an advisory opinion with respect to petitioner's application. INS then scheduled not one, but two hearings, at which counsel for petitioner appeared. Yet, petitioner was not to be found at the critical moment. He elected, perhaps entirely through ignorance and misunderstanding, to remain out of touch with his own counsel who thus found themselves unable even to ascertain his whereabouts.

■ Under these admittedly unfortunate circumstances, it would be extravagant for a court which so vigorously enforces its own rules, including deadlines, to condemn the BIA as having abused its broad discretion in not providing Mr. Reyes–Arias with a second (or indeed third) opportunity for a hearing. For the same reasons, we reject petitioner's claim that the procedures followed by the immigration judge violated due process; *see* Brief for Petitioner at 5–8, 25–26. Rather, as we just noted, petitioner was afforded not one but two opportunities to be heard (and assisted by counsel). After that, his motion to reopen was duly considered by both the immigration judge and the BIA. Under these circumstances, due process was abundantly satisfied.

Nor need we tarry long over petitioner's argument that the substantive standards for granting a motion to reopen were met. Reply Brief at 5–8. Of particular vulnerability is petitioner's somewhat odd contention that he was "unavailable" at the time of the July 1985 hearing. *Id.* at 5; *see* 8 C.F.R. 242.22 (1988); (providing that motion to reopen will be granted where evidence "was not available and could not have been discovered or presented at the hearing;"). As the regulations suggest, availability has to do with whether evidence could have been discovered or presented. *INS v. Abudu*, 485 U.S. 94, 108 S.Ct. 904, 913, 99 L.Ed.2d 90 (1988). Manifestly, for reasons sufficiently obvious to warrant setting forth only our conclusion, Mr. Reyes–Arias could have been available to testify had he simply maintained contact with counsel. In any event, petitioner's "unavailability" argument has been collapsed on appeal into his due process claim: "The entire substance of Petitioner's political asylum and withholding of deportation claims was 'unavailable' to the court at the deportation hearing upon the Court's violation of Petitioner's due process rights." Reply Brief at 5. But, as we just pointed out, due process was fully satis-

---

**1.** Petitioner has not claimed that, due to the immigration judge's reliance on printed forms, petitioner's counsel was not aware at the hearing of the judge's intention to dismiss for lack of prosecution. The fairness of such a regime is thus not before us.

fied, thus eviscerating the predicate for petitioner's "unavailability" contention.

Mr. Reyes–Arias' ultimate contention, pressed vigorously at oral argument, is that there simply has to be a determination of his asylum claim on the merits at a hearing at which he is present. We think not. Quite apart from the deference, previously alluded to, which properly attaches to administrative interpretations of administrative regulations, petitioner's proposed construction of section 208.6 is, upon analysis, extreme. It would mean, ultimately, that although the apparatus of government has been made ready (complete with counsel for the claimant attending to his interests) and stands open to the advancement of this most sensitive of human claims in the international community, deadlines nonetheless do not really count and hearing dates are inevitably to be trumped by the failure of communication occasioned by the petitioner's own conduct. Petitioner's position means, in short, that there can be no such thing as a presumed-in-law abandonment of an asylum claim even where the individual advancing the claim fails to appear, without explanation, at the appointed time and place.[2] Here, the situation is especially extreme, since a hearing was scheduled (and apparently held) in June 1985 and, at petitioner's counsel's request, was then continued for a month. The continued hearing was then commenced in accordance with the duly announced schedule. The immigration judge was there; counsel for petitioner was present; the record was ready; but petitioner was not there to avail himself of the procedures which had been made available for him. Under these circumstances, we simply cannot accept the proposition that the immigration judge was powerless to close the

chapter on petitioner's asylum claim. *Cf. INS v. Abudu,* 485 U.S. 94, 108 S.Ct. 904, 915, 99 L.Ed.2d 90 (1988) (asylum claim is lost where alien unreasonably fails to assert it in deportation hearing). Rules are rules, see *Reuters Ltd. v. FCC,* 781 F.2d 946, 951 (D.C.Cir.1986), and we cannot in conscience condemn a course of administrative conduct which was carried on entirely in conformity with applicable law and regulations. Although our laws intend to provide aliens with the full benefits of procedural fairness, this obviously does not eliminate their responsibility to assert any claims of procedural defects.

Under these circumstances, it was not an abuse of discretion on the part of the BIA to refuse to reopen the proceedings.

DENIED.

D.H. GINSBURG, Circuit Judge, concurring:

Although I agree with the majority of the court's opinion, I am unconvinced of the need or desirability of expressing a view (as the court does in a footnote, Opinion at 504, n. 2) as to whether the requirement that an immigration judge (IJ) in a deportation hearing proceed to a determination "in like manner as if the alien were present," 8 U.S.C. § 1252(b) (1982), applies to an asylum claim raised in the context of the deportation proceeding.

As the court points out, Reyes–Arias makes a "passing reference" in his reply brief to the suggestion that the "in like manner" clause requires the IJ to proceed to the merits of his asylum claim rather than dismissing it for "lack of prosecution." At oral argument, however, counsel more clearly disclaimed any reliance whatsoever on such an argument. Whatever counsel's reason for having done so, I am

---

**2.** In petitioner's reply brief a passing reference is made to the necessity, under section 1252(b), of the Immigration and Nationality Act, of proceeding to a full determination of an asylum claim. Reply Brief at 3–4. We are unpersuaded that this reference, appearing as it does rather belatedly in the reply brief, rises to the level of an argument. In any event, this court has held that section 1252(b) does not absolutely prohibit dismissal of asylum claims for failure to prosecute. *Maldonado v. INS,* 865 F.2d 328

(D.C.Cir.1989). Of course, dismissal for lack of prosecution may, in some circumstances, constitute an abuse of discretion. *Cf. Green Country Mobilephone Inc. v. FCC,* 765 F.2d 235 (D.C.Cir. 1985) (inconsistent and rigid enforcement of filing deadlines); *New York State Research and Development Auth. v. FERC,* 746 F.2d 64 (D.C. Cir.1984) (new procedure unfairly applied to bar application). But the present case is not of this ilk.

not as certain as apparently is the court that the argument would be, if presented, without merit. Although the court addresses the issue only in *dicta*, I think it is significant enough to justify a few more words on its merits.

The INS implicitly concedes that, as Reyes–Arias maintains, the first clause of the sentence that contains the "in like manner" clause does apply to this case. The sentence reads:

> If any alien has been given *a reasonable opportunity to be present* at a proceeding under this section, and *without reasonable cause* fails or refuses to attend or remain in attendance at such proceeding, the special inquiry officer may proceed to a determination *in like manner* as if the alien were present.

(Emphases added.) In response to Reyes–Arias's argument that he had reasonable cause for his failure to appear at the hearing and that the IJ should therefore not have dismissed his asylum application, the INS never argues that the "reasonable opportunity" or "reasonable cause" standards of section 1252(b) are inapplicable; it claims only that Reyes–Arias did have a "reasonable opportunity to be present" and without "reasonable cause" failed to appear at his deportation hearing.

The court does not gainsay that Reyes–Arias would have been entitled to a reopening of his application had he been able to demonstrate reasonable cause for his absence; but if the first half of the above-quoted sentence governs the asylum claim, then the latter part of the same sentence should presumably govern that claim as well. Neither the INS nor the court may, without a warrant from Congress, cherry-pick the portions of a single statutory sentence; absent a persuasive argument to the contrary, we must assume that Congress intended that the sentence as a whole either apply or not apply to a particular situation.

I am particularly reluctant to join in the court's offhand dismissal of the section 1252(b) claim in light of our treaty obligations under the United Nations Protocol Relating to the Status of Refugees, 19 U.S. T. 6257 (1967). Under the Protocol, a refugee may be expatriated only for being a "danger to the security of the country" or for committing a "particularly serious crime." 19 U.S.T. at 6276. A procedural error in an immigration proceeding does not constitute such misconduct, and the court does not claim otherwise. What of the alien who, having submitted with his application for asylum sufficient evidence that he is entitled to asylum that the government fails adequately to rebut, fails to appear at his deportation-asylum hearing? Perhaps, like Reyes–Arias here, he is even represented by counsel at the hearing. To permit a dismissal for lack of prosecution in such a case would allow the IJ to ignore the evidence entirely and to deny the asylum application of one who qualifies as a refugee, in the face of a treaty obligation squarely to the contrary. If the IJ decides on the merits of the evidence before him that the alien is not a refugee, on the other hand, the Protocol is irrelevant. It is the failure to decide the potentially meritorious claim on the merits that creates the problem.

The court cites *Maldonado–Perez v. INS*, 865 F.2d 328 (D.C.Cir.1989) for the proposition that section 1252(b) permits "dismissal of asylum claims for failure to prosecute." Maj. op. at 504, n. 2. To the extent it is relevant, however, *Maldonado–Perez* points in the opposite direction. There, the court repeatedly states that, as I argue above, section 1252(b) governs the IJ's disposition of asylum claims. At 332, 333. In fact, the court directly states that the IJ may deport the alien *"in absentia* based on the existing record," that is, on the merits. At 333. Contrary to the court's implication here, nowhere in *Maldonado–Perez* did we suggest that section 1252(b) permits the IJ to deny an alien's asylum application *because* he failed to appear; rather, the failure to appear creates an opportunity for the IJ to decide the claim *in absentia*, but on the merits, *i.e.*, "in like manner as if the alien were present."

I do not know whether, were I required to decide whether section 1252(b) applies here, I would reach a different result than

does the court. I merely state that, where a serious question could be raised about the meaning of a statute, and where there is nothing more on which to base our decision than a "passing reference" in a reply brief, not even "ris[ing] to the level of an argument," Maj. op. at 504, n. 2, we should decide the issue only if we must. When he abandoned the argument without making any effort to defend it, Reyes–Arias's counsel relieved us of that burden. We should not lightly choose to take it up again.